# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

**LESLIE L. SANDER,**                )

)        C.A. No. 12-2648

Plaintiff,            )        District Court No. 1-10-cv-684

)

v.                              )

)

**LIGHT ACTION, INC.,**              )

)

Defendant.          )

---

## APPELLANT'S OPENING BRIEF

---

On Appeal from the United States District Court
for the District of Delaware

BY:
**MARTIN & ASSOCIATES, P.A.**

*/s/ Jeffrey K. Martin*

---

**JEFFREY K. MARTIN**        #2407
1508 Pennsylvania Avenue
Wilmington, DE 19806
302-777-4680
jmartin@jkmartinlaw.com
*Attorney for Appellant*

DATED:  October 22, 2012

# APPELLANT'S OPENING BRIEF
# TABLE OF CONTENTS

**Title**                                                                              **Page**

Table of Citations……………………………………………………………...iii

Statement of Subject Matter Jurisdiction and Appellate Jurisdiction……….1

Statement of Issues………………………………………………………….....2

Statement of Case…………………………………………………….…..…..2

Statement of Facts……………………………………………...………………....4

    A. Method of Compensation: Salary Basis or Hourly……..……………4

        1. Litigation of Salary Basis Issues…………………………………...4

        2. Base Pay as Part of Compensation Plan…………………………...6

        3. Light Action's Representations as to Partial-Day Deductions…….9

        4. Light Action's Response to Appellant's Partial-Day Deduction
        Claim…………………………………………………………………...10

    B. Denial of Appellant's Motion to Amend to Add Partial-Day
    Deductions………………………………………………………….…….11

    C. Appellant's Retaliation Claim…………………………………………13

Statement of the Standard or Scope of Review……………………….....17

Summary of the Argument…………………………………………………....18

Argument I: The court below erred in its determination that Appellant was
an exempt employee because the evidence is clear that she was paid on an
hourly basis rather than a salary basis……………………………………...20

Argument II: The court below erred when it denied Appellant leave to amend to add the partial-day deductions to the Amended Complaint. By the time of this requested amendment, this issue was extensively litigated by Appellee who cannot claim any prejudice from the inclusion of this issue in the summary judgment briefing……………………………………….....24

Argument III: The court below erred when it determined that Appellant had not sufficiently pled a retaliation claim pursuant to the Fair Labor Standards Act …………………………………………………….……………..…….…..27

Conclusion……………………………………………………………….29

Combined Certifications………………………………………………....30

Notice of Appeal…………………………………………………..AA-001

Memorandum Order dated May 18, 2012……………………………AA-002

Memorandum Opinion dated March 21, 2012………………………AA-004

# **Table of Citations**

## **Cases**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 248 (1986)…………………………………………17

*Beers-Capital v. Whetzel*
    256 F.3d 120, 130 n.6 (3d Cir. 2001)………………………………..17

*Burlington Coat Factory Sec. Litig.*
    114 F.3d 1410, 1426 (3d Cir. 1997)………………………………...24

*Dole v. Arco Chemical Co.*
    921 F.2d 484, 487 (3d Cir. 1990)…………………………………...24

*Foman v Davis*
    371 U.S. 178, 182 (1962)…………………………………………...24

*Idaho Sheet Metal Works, Inc. v. Wirtz*
    383 U.S. 190 (1996)………………………………………………...23

*Krouse v. American Sterilizer Company*
    126 F. 3d 494, 500 (3d Cir. 1997)…………………………………..17

*Martin v Malcolm Pirnie, Inc.*
    949 F.2d 611,615 (2d Cir. 1991), cert. denied, 506 U.S. 905, 112
    S.Ct. 298 (1992)…………………………………………………..22

*Mitchell v. Kentucky Finance Co.*
    359 U.S. 290, 295 (1959)…………………………………………...23

*Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co.*
    124 F. 3d 508, 515 (3d Cir. 1997)…………………………………..17

*Reeves v. Sanderson Plumbing Prods., Inc.*
    530 U.S. 133, 151 (2000)…………………………………………...17

**Statutes and Regulations**

Fed. R. Civ. P. 15(a)(2)……………………………………………...……..24

Fed. R. Civ. P. 56(c)……………………………………………………..17

28 U.S.C. § 1291………………………………………………………….1

29 C.F.R. §541.602……………………………………………………...21

29 C.F.R. §541.603……………………………………………………...20

29 U.S.C. §§ 201 *et seq*..……………………………………………...1

29 U.S.C. § 215...…………………………………………………………1

## STATEMENT OF SUBJECT MATTER JURISDICTION AND

## APPELLATE JURISDICTION

Plaintiff-Appellant, Leslie L Sander, (hereinafter "Appellant" or "Plaintiff") filed a civil action against Defendant-Appellee Light Action, Inc. in the United States District Court for the District of Delaware on August 12, 2010. The basis of the Complaint was Light Action's failure to pay overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (hereinafter "FLSA") and Light Action's retaliation against Appellant when she complained to the company about its overtime policies contrary to §215 of the FLSA. Therefore, jurisdiction was founded on the existence of federal questions under a federal statute (FLSA).

Appellate jurisdiction is founded under 28 U.S.C. § 1291 because the District Court granted a motion for summary judgment on March 21, 2012 in favor of Light Action on the federal claims (all claims) brought by Appellant Leslie Sander. Appellant filed a motion for reargument from the order granting summary judgment to Light Action. Appellant's motion for reargument was denied on May 18, 2012. A notice of appeal was timely filed with this Court on June 7, 2012. (AA-001).

## STATEMENT OF ISSUES

1.    Did the District Court err when it determined that Light Action made payroll payments to Appellant on a salary basis rather than on an hourly basis?

2.    Did the District Court err when it determined that Appellant was an exempt employee under the Fair Labor Standards Act and therefore not entitled to overtime compensation?

3.    Did the District Court err when it denied Appellant the right to amend her Complaint to add that Appellant was non-exempt because she was paid on an hourly basis rather than a salary basis?

4.    Did the District Court err when it determined that Appellant had not sufficiently pled a retaliation claim pursuant to the Fair Labor Standards Act?

## STATEMENT OF CASE

Appellant was a manager with Light Action, a company that provided production support to entertainment venues. Light Action management advised Appellant in 2007 that she would have a different compensation formula that would equate to her compensation before being named a manager in 2007,

approximately $74,000 annually. She was guaranteed a base salary of $60,000 and the remaining compensation would come from shows (sometimes referred to as "gigs") and some overtime when she exceeded 45 hours per week. The evidence adduced during discovery showed that Plaintiff did not receive the $60,000 salary guaranteed to her and instead her base pay was reduced by partial day deductions when she worked less than 40 hours per week. Light Action disputes that any deductions were made from her $60,000 guaranteed annual salary.

Appellant was terminated less than a week after advising the Light Action Vice President that she was going to consult with a lawyer with regard to overtime and other wage and hour issues. Light Action denies knowledge of Plaintiff seeking legal advice and instead argues that Appellant was terminated from employment due to behavior and conduct issues.

This case was filed in the U.S. District Court for the District of Delaware and was assigned to the Hon. Leonard P. Stark. A copy of the Complaint, the Amended Complaint and the Answer to the Amended Complaint are found in the Appendix. Following the close of discovery, both parties filed cross-motions for summary judgment. Appellant argued that she was non-exempt under the FLSA and therefore entitled to overtime. In addition, she argued that she had sufficiently pled an action sounding in FLSA retaliation. Light Action argued that Appellant

was exempt under the FLSA and that Appellant did not provide sufficient notice of her intent to file an FLSA retaliation claim.

District Judge Leonard P. Stark granted summary judgment in favor of Light Action on all counts finding that Appellant was an exempt employee not eligible for overtime compensation. Judge Stark also found that Appellant had not made a proper claim for FLSA retaliation. Judge Stark denied Appellant's motion for reargument.

## STATEMENT OF FACTS

### A.    Method of Compensation: Salary Basis or Hourly

#### 1.    Litigation of Salary Basis Issues

The most contested issue in this case is whether Appellant Leslie Sander was paid on a "salary basis" or whether she was paid hourly. It is undisputed that if the court were to find that Appellant was paid on an hourly basis, she would be deemed nonexempt and therefore eligible for overtime compensation. If, however, the Court determines that Appellant was paid on a salary basis, due to the concessions made by Appellant in her discovery responses (AA-138-140), Appellant would be deemed exempt and ineligible for overtime compensation.

Appellant did not initially plead the issue of hourly compensation as the reason why she was eligible for overtime compensation. (AA-019-024). It was not until after discovery commenced and Appellant received the initial document production through discovery that this issue of hourly compensation appeared. The issue of hourly compensation was brought to the attention of Light Action's counsel at the outset of Plaintiff's deposition on June 28, 2011. (AA-138-140). The lower court issued a scheduling order on January 24, 2011 setting forth a discovery period that ended on October 31, 2011. Light Action's counsel acknowledged that Appellant, through her counsel, stipulated that the status requirements of the executive and/or administrative exemptions were met and that the only question determining exemption was whether Appellant "meets a salary basis test." (AA-139). Appellant's counsel noted on the deposition record that her pay stubs indicated that Appellant was being paid on an hourly basis. Id.

What followed from Appellant's June deposition was a period of scrutiny of the pay stubs and the computations for the pay stubs provided by Light Action through discovery. On August 19, 2011, Appellant's counsel wrote to Jonathan Walker, counsel for Light Action, and advised him in pertinent part:

> I am writing to you in response to your letter dated August 2, 2011 regarding the exemption status of my client with respect to the numerous partial-day deductions she incurred throughout her tenure with Light Action, Inc.… I met with Ms. Sander to thoroughly review the exhibits your client produced pursuant to our Request for

Production. Upon review of the documents, we found many instances where my client received only "partial-pay," representing straight hourly pay…. The records reflect, however, that the $60,000 sum promised to my client was not paid. A lesser amount was paid when my client did not work 45 hours per week (often times because she had gigs). My client's yearly compensation was supposed to equal $74,392.50. She never achieved those promised earnings in large part due to being paid on an hourly rather than a salary basis. (AA-064).

Light Action propounded discovery the following month asking Appellant to identify when partial-day deductions were made. (See D.I. # 36, AA-224). Appellant provided responses to these Interrogatories and also Request for Admissions on October 28, 2011, two weeks prior to the deposition of Light Action Vice President Paula DeLuca. (AA-147-150). Ms. DeLuca was questioned at her deposition extensively about the partial-day deductions made to Leslie Sander. (AA-078-100).

### 2.    Base Pay as Part of Compensation Plan

In February 2007, when Appellant Sander assumed her new position at Light Action as Shop Manager, she was presented with a compensation plan that was intended to keep her compensation at the level it was in 2006 when she earned $74,118. (AA-060). The compensation plan written in the hand of Light Action Vice President Paula DeLuca, was a three-tiered plan that included base pay of $60,000. Light Action has agreed that this sum represents a guaranteed base pay of $60,000. (AA-113). In addition to the $60,000 base pay, Appellant was to be

compensated for shows (or gigs) and there was further compensation of three hours overtime when she worked over 45 hours per week. Ms. DeLuca clarified the terms on this document by indicating that the weekly base of $1153.85 would be paid each week if she worked up to 45 hours per week. (AA-100) Appellant was also able to earn $388.50 for each show. Lastly, she would earn $30 per hour representing overtime in excess of 45 hours per week. [1]

Ms. DeLuca was questioned at her deposition with regard to any deductions that were made from Appellant's base pay. While she initially testified that there were no deductions, she later relented. The deductions were the result of prorating Appellant's pay. (AA-090).

The partial-day deductions taken from Appellant's base pay, 16 in number, are shown on a spreadsheet attached as Exhibit 1 to Plaintiff's Motion for Reconsideration. (AA-196). During the period in question from June 2007 through February 2010, a total of 241.3 hours were deducted from Appellant's base pay, totaling $6220.04 in deductions. The fractional numbers shown on the spreadsheet provide further proof that these are partial-day deductions rather than a deduction

---

[1] Ms. Deluca was asked about the $30 an hour overtime figure in light of the fact that Appellant's base pay was in excess of $25 per hour. Ms. Deluca acknowledged that this did not represent time and a half and that she did not know from whence this figure came. (AA-085).

for a full day (or days). The column, "Notes on Plaintiff's Timecards," are taken verbatim from Appellant's timecards, prepared by Vice President DeLuca, and show the "proration" of the shop hours which thereby served as a deduction from Appellant's base pay.[2] (AA-197-213).

Ms. DeLuca testified at her deposition on behalf of Light Action that she prorated Appellant's hours based upon the time that she worked. (AA-090,098,100). DeLuca acknowledged that if Appellant were to be paid the show rate during the week, that she was not going to be paid the $1153.85 base rate. (AA-100). Ms. DeLuca further acknowledged that as to the three-tiered compensation system, it was "not alternative but additive." (AA-099,100). In other words, Appellant was to be paid her base pay plus compensation for either shows or overtime. The net effect of the computation method used by Ms. DeLuca to determine Appellant's compensation was exactly what she said the compensation was not designed to be: alternative rather than additive. Whenever Appellant did a show during the week during the weekday (shop hours), she was docked her base pay and was paid at the show rate. (AA-078-100).

---

[2] While the spreadsheet shows 17 instances of deductions, the deduction of eight hours for the week ending 6/27/09 appears to be a full day rather than a partial-day deduction. Thus, this deduction of eight hours will not be considered in Appellant's argument.

Appellant's annual compensation for the years 2008 and 2009 fell far short of the $74,000 package that was presented by Ms. DeLuca. Ms. DeLuca did not dispute the numbers provided by the Social Security Administration showing $71,983 in 2008 and $67,653 in 2009. (AA-153,154).

### 3.    Light Action's Representations as to Partial-Day Deductions

Throughout the course of the briefing in the court below, Light Action consistently represented that there was no partial-day deductions from Appellant's base pay. (AA-164). Appellant's employer argued that on the days where Appellants base pay was prorated, it was supplemented and actually exceeded by the payment for the shows which was paid at a higher rate than Appellant's hourly rate. (AA-113). Light Action argued consistently in response to Plaintiff's claims of partial-day deductions that Appellant received a guaranteed base salary of $60,000. (AA-113,126) Further, Light Action argued that Appellant admitted that she had a guaranteed salary of at least $60,000. (AA-112). Appellant made no such admission.

Light Action also argued to the lower court that there was no genuine issue of fact with regard to any improper deductions. (AA-108). Light action argued that Ms. Sander was seeking "double pay" for getting paid both her base salary and her show rate when they occurred during shop hours. (AA-110).

### 4.    Light Action's Response to Appellant's Partial-Day Deduction Claim

Light Action initially refused to acknowledge that the partial-day deduction (or salary basis) issue was raised at the time of the summary judgment briefing. (AA-106). It alleged that there was only one allegation in support of Appellant's claim for overtime and that was that the exemption was lost due to her reporting of her hours. (AA-111). While opening with these arguments, in apparent recognition of the partial-day deduction claim, Light Action argued that Plaintiff should be precluded from the use of a "new claim" with her dispositive motion. Light Action argued in its summary judgment brief that Plaintiff should be precluded from raising through the summary judgment process claims not asserted in the pleadings. (AA-130).

As an alternative to arguing that Appellant had not raised this issue in the case, Light Action then argued to the court that Appellant had not raised this issue until the end of discovery. (AA-108). Light Action also argued that Appellant did not raise the issue of partial-day deductions in her discovery responses or in any pleading. (AA-182). Seemingly contradictory, Light Action also argued that long after Plaintiff's deposition, Plaintiff developed but failed to plead, the partial-day deductions.

**B.    Denial of Appellant's Motion to Amend to Add Partial-Day Deductions**

As detailed in section A of this brief, Plaintiff put Defendant on notice during the first five months of the discovery period, that its principal argument in support of non-exempt status was that Plaintiff was paid on an hourly basis rather than a salary basis. That issue was thoroughly examined by both sides during discovery. Despite Light Action's representations to the contrary in its summary judgment pleadings, this issue of partial-day deductions was timely raised in discovery and was the primary subject of discovery below. (AA-138-140). The final discovery requests on this issue came from Light Action when it requested Plaintiff to detail the pay periods in which partial-day deductions occurred. (AA-147-150). Plaintiff responded to this discovery in late October, approximately 45 days before cross-motions for summary judgment were filed by both parties. Id.

Plaintiff was therefore surprised to read in the summary judgment briefs, Light Action's position that the issue of partial-day deductions was either raised very late in the discovery period, or not at all in the pleadings. (AA-106-115). Plaintiff addressed this issue in its responsive pleadings regarding the summary judgment motions. (AA-116-119).

Plaintiff filed her motion for leave of court to amend the Amended Complaint to add the allegation that language in support of her claim for non-

exemption from the FLSA because of improper deductions from her base pay. (AA-171,172). Plaintiff noted in her responsive pleadings that she did not believe that this motion to amend was necessary but rather she filed it out of an abundance of caution as a direct result of Light Action's implausible argument to suggest that these FLSA violations were not raised in the pleadings. (AA-189,190).

The court below denied Plaintiff's application to further amend her complaint to add the language involving partial-day deductions. (AA-004-014). In so doing, however, the court noted, in the alternative, the issue of partial-day deductions was in the case and the court made a ruling denying Plaintiff's argument that she was non-exempt as a matter of law ruling instead that Plaintiff had received the guaranteed base pay of $60,000 and should be deemed to have been paid on a salary basis. The court concluded that there was no need for a Second Amended Complaint sought by plaintiff. (AA-017).

Alternatively, the court denied Plaintiff's request for a Second Amended Complaint because it "would add something new to the instant case." (AA-017). Further, the court denied Plaintiff's motion because it was, "too prejudicial and burdensome to defendant, as well as disruptive to the Court to permit amendment at this point."

## C.    Appellant's Retaliation Claim

Within three months of the filing of the Complaint in this matter, Plaintiff filed a motion for leave of court to file an Amended Complaint. Plaintiff advised the court that she became aware of retaliatory conduct and requested the right to file an Amended Complaint. The court granted Plaintiff's motion and the Amended Complaint was filed on January 24, 2011.

The amended complaint included five new paragraphs under the heading of "III. Retaliation." (AA-027-042). The new paragraphs were as follows:

> 27. On May 12, 2010, Plaintiff and other employees of Light Action were given a new employee handbook and were asked to sign a form stating that they had read and understood the document.

> 28. After reviewing the new handbook and consulting with Light Action Vice-President Paula DeLuca, Plaintiff informed Defendant that, because of several changes in the company's overtime compensation and exemption policies, she was uncomfortable signing for the document and would be seeking legal counsel to better explore her rights as an employee.

> 29. On May 18, 2010, Plaintiff sought counsel from Glenn Brown, Esq. of Real World Law in Wilmington, Delaware with regard to wage and hour issues as an employee of Light Action.

> 30. On May 26, 2010, Plaintiff returned home from work and received a phone call from Ms. DeLuca terminating her a approximately a month shy of her ten year anniversary with the company. When Plaintiff inquired about the reason for termination, Ms. DeLuca told her that because Delaware was a Right-to-Work state, she was not required to provide Plaintiff with a reason for termination.

31. Ms. DeLuca later stated to the Delaware Department of Labor (DDOL) that, "there was not a good fit between employer and claimant (Ms. Sander)." Further, Light Action cited no misconduct on Plaintiff's part in their report to the DDOL.

In addition, the Amended Complaint added "Count III Retaliation" and five new paragraphs under this additional cause of action. The additional paragraphs are as follows:

40. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 39.

41. This cause of action arises under the Delaware Discrimination in Employment Act, 19 Del.C. §726.

42. Defendant intentionally and maliciously discriminated against Plaintiff in retaliation for her complaints in violation of 19 Del. C. §726.
**(a) consequently terminated Plaintiff after she sought legal counsel and began questioning Light Action's exemption policies.**

43. Defendant acted with discriminatory motive and the reasons provided by Defendant for terminating and/or transfer Plaintiff are pretextual.

44. As a result of Defendant's unlawful retaliation against Plaintiff, she has lost considerable pay, past, present and future and has suffered humiliation, mental anguish and emotional pain. (emphasis supplied)

Finally, the WHEREFORE section of the Complaint was amended to add new paragraphs that included damages for termination from employment that did not include FLSA overtime damages. Included in the additional damages sought were compensatory damages as well as punitive damages. (AA-041-042).

14

Counsel for Appellant takes full responsibility for and regrets the erroneous references to the Delaware Discrimination in Employment Act ("DDEA") which has no application to the claims set forth in the Amended Complaint. Similar apologies were made to the court below in Plaintiff's answering memo in response to defendant's motion for summary judgment. (AA-155).

Although the Amended Complaint was filed with the court more than five months prior to Plaintiff's deposition taken at the end of June 2011, Light Action's counsel did not question Plaintiff at all about her retaliation claim during the course of her deposition. (AA-151). Similarly, Light Action did not seek any discovery based upon the new allegations found in the Amended Complaint, in paragraphs 27 through 31 and paragraphs 40 through 44.

In response to Defendant's motion for summary judgment seeking judgment as a matter of law on Count III retaliation, without the benefit of any discovery responses sought by Defendant, Plaintiff submitted her affidavit to support her opposition to Defendant's motion for summary judgment which included requesting summary judgment on Count III retaliation. (AA-158, 159). In pertinent part and in an attempt to further describe Defendant's retaliatory conduct, Plaintiff testified by affidavit as follows:

1.  I am Plaintiff in the above-captioned matter and was an employee of Defendant Light Action who complained to management that I was not receiving all overtime compensation due me.

2.  On May 18, 2010, approximately one week before my termination from employment, I consulted an attorney regarding wage payment matters, and, in particular, my employer's failure to pay overtime compensation due to me under the Fair Labor Standards Act ("FLSA").

3.  I advised Vice President Paula DeLuca that I was consulting an attorney about my employer's failure to pay overtime compensation and other improper payment practices.

4.  My employer was deducting hours from my base pay when I failed to work on the premises for more than 40 hours during the week.

5.  I believe that the reasons stated for my termination were pretext and that the real reason for my termination was retaliation for my complaints about my employer's failure to pay me all the overtime compensation I was due.

Defendant characterized this affidavit as a self-serving "sham affidavit." (AA-166). In its opening brief, Defendant included three declarations totaling over 20 pages from its owner and two administrators. The court gave deference to these declarations and cited them in its Memorandum Opinion in favor of Light Action.

Defendant was quick to show fault of Plaintiff in the erroneous references to the DDEA. Defendant's references to the retaliation claim were limited to paragraph 42 of the Amended Complaint. Nowhere did Defendant or the court below reference five retaliation paragraphs added under Factual Background in the Amended Complaint and were found as paragraphs 27 through 31.

## STATEMENT OF THE STANDARD OR SCOPE OF REVIEW

Review of the decision of the District Court granting a motion for summary judgment is plenary, with the facts viewed in the light most favorable to the nonmoving party (in the instant matter, Appellant), and with all reasonable inferences drawn in favor of the nonmoving party.  Beers-Capital v. Whetzel, 256 F.3d 120, 130 n.6 (3d Cir. 2001); Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co., 124 F. 3d 508, 515 (3d Cir. 1997).

Summary judgment must be granted when the materials of record show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Krouse v. American Sterilizer Company, 126 F. 3d 494, 500 (3d Cir. 1997).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must "give credence to the evidence favoring the nonmovant as well as the evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).

## SUMMARY OF THE ARGUMENT

The sole issue with regard to whether Appellant was properly deemed to be an exempt employee was whether she was paid her base pay of $60,000 on a salary basis. There is no dispute in the record, however, that there were numerous partial-day deductions from Appellant's base pay and this fact, as a matter of law, means that Appellant was paid her base pay on an hourly basis. The pay records as well as the testimony of Appellee's Vice President acknowledging proration of Appellant's base pay corroborate Appellant's status as an hourly paid employee. As an hourly paid employee, Appellant is regarded as non-exempt under the FLSA and is therefore eligible for overtime.

The court below erred by denying Appellant's request to further amend the Amended Complaint to include the allegation of partial-day deductions in support of her misclassification claim wherein she was wrongly considered to be an exempt employee. The issue of partial-day deductions and whether Appellant was paid on a salary basis was raised at the time of Plaintiff's deposition in June 2011. Subsequently, each party issued and/or responded to discovery requests on the issue of partial-day deductions before discovery closed on at the end of October 2011. The court, in its Memorandum Opinion, acknowledged this issue and ruled as to whether Appellant's base pay was paid on a salary basis. Appellant's requested amendment was filed after Appellee denied in its summary judgment

briefs that the partial-day deduction issue was an issue in the case. Appellant's intended amendment did not present any new issues to the Appellee or the court and did not cause any prejudice to the Appellee or to the court.

The court erred in granting summary judgment on Appellant's claim of FLSA retaliation. While appellant acknowledges pleading errors in the Amended Complaint, the Amended Complaint also contained five paragraphs of facts underlying Appellant's claim of retaliatory termination following Appellant's disclosure to Appellee's vice president that she met with legal counsel to discuss her overtime claim and other alleged wage and hour violations. Appellee failed to ask any questions of Appellant about the retaliation issue during the course of Plaintiff's deposition. Appellee's failure to propound discovery on this issue on which it had notice five months before Plaintiff's deposition is no reason for the dismissal of this cause of action.

**ARGUMENT**

**I. THE COURT BELOW ERRED IN ITS DETERMINATION THAT APPELLANT WAS AN EXEMPT EMPLOYEE BECAUSE THE EVIDENCE IS CLEAR THAT SHE WAS PAID ON AN HOURLY BASIS RATHER THAN A SALARY BASIS.**

Light Action filed for summary judgment below arguing that Plaintiff was an exempt employee under the FLSA because she was paid on a salary basis rather than an hourly basis. The United States Department of Labor promulgated regulations under the FLSA to define the distinction between an employee being paid on a salary basis versus an employee being paid on an hourly basis. Title 29, Section 541.603 of the Code of Federal Regulations, makes clear that making improper deductions on a purported salary has the legal effect of having the employer lose the exemption status. Section 541.603 (a) provides in pertinent part:

> **An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay the employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis. 29 C.F.R. §541.603.**

The term "salary basis" is defined under Section 541.602 of the C.F.R. which provides in pertinent part:

> **An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period on a weekly or less frequent basis a predetermined amount constituting all or part of the employees compensation, which amount is <u>not subject to reduction</u> because of variations in the quality or quantity of the work performed (emphasis supplied). 29 C.F.R. §541.602.**

In the case at bar, there is no dispute that Light Action made deductions from Appellant's base pay when she worked in the shop less than 40 hours per week. The spreadsheet found in our Appendix at AA-196 reflects that there were 16 pay periods wherein Appellant's base pay was reduced because she worked in the shop less than 40 hours per week. Such deductions based upon the "quantity of the work performed" are proscribed by Section 541.602 as cited above.

The Regulation at Section 541.602 goes on to provide that the "**employee must receive the full salary of any week in which the employee performs any work without regard to the number of days or hours worked**." This Regulation speaks directly to the facts of this case wherein it is provided:

> **An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available. 29 C.F.R. §541.602. (emphasis supplied)**

This CFR Regulation and its predecessors have been upheld by the Courts of Appeal. "An employee who can be docked pay for missing a fraction of a work day must be considered hourly, rather than a salaried employee." Martin v Malcolm Pirnie, Inc. 949 F.2d 611, 615 (2d Cir. 1991), cert. denied, 506 U.S. 905, 112 S.Ct. 298 (1992).

Appellant respectfully submits that both the law and the facts in the case at bar are clear. The appellant was paid her $60,000 base pay reduced by partial-day deductions when she did not work 40 hours per week in Light Action's shop. The testimony is also undisputed that, and acknowledged by both Light Action and the Court, that the base pay of $60,000 was to have been guaranteed. The three-tiered compensation plan for Appellant was expected to yield over $74,000 in annual earnings. In the years 2008 and 2009, Appellant earned appreciably less than $74,000, in part because there were numerous deductions from her $60,000 base pay.

Paula DeLuca, Vice President of Light Action and the person in charge of payroll, acknowledged that the compensation plan for Appellant was to be "additive and not alternative." That meant that, in addition to the guarantee of $60,000 base pay, she was to earn additional compensation when she did shows and when she worked in excess of 45 hours per week. Instead, Appellant was paid "in the alternative" meaning that she was paid for her actual hours in the shop and

less than a full day, when she worked a show on that same day. While Appellee argues that she was paid at a rate on these occasions higher than her base pay, she actually sustained a loss because hours were deducted from her "guaranteed" base pay due to the hours she spent on the show during a particular week day.

The spreadsheet developed from the actual pay records of Appellant as provided by Appellee show that there were 16 pay periods where there were partial-day deductions. A total of $6,220.04 was deducted from Appellant's base pay representing the deduction of 241.3 hours. Although Appellee suggested in its briefing below that such deductions were infrequent, the spreadsheet reveals that there were deductions in 16 of the 69 pay periods between June 17, 07 and February 6, 2010. This means that partial-day deductions were made from Appellant's base pay on 23.19% of the pay periods during this interval.

Finally, it need be noted that the burden to prove an exemption from the overtime provisions of the FLSA is on the employer. Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190 (1996). The Supreme Court has also held that exemptions must be narrowly construed against the employee. Mitchell v. Kentucky Finance Co. 359 U.S. 290, 295 (1959).

**II. THE COURT BELOW ERRED WHEN IT DENIED APPELLANT LEAVE TO AMEND TO ADD THE PARTIAL-DAY DEDUCTIONS TO THE AMENDED COMPLAINT. BY THE TIME OF THIS REQUESTED AMENDMENT, THIS ISSUE WAS EXTENSIVELY LITIGATED BY APPELLEE WHO CANNOT CLAIM ANY PREJUDICE FROM THE INCLUSION OF THIS ISSUE IN THE SUMMARY JUDGMENT BRIEFING.**

The litigants' ability to amend pleadings is set forth in Federal Rule of Civil Procedure 15(a)(2) providing that, "the court should freely give leave when justice so requires." This Court has adopted a liberal approach to the amendment of pleadings. <u>Dole v. Arco Chemical Co.</u>, 921 F.2d 484, 487 (3d Cir. 1990). "In the absence of undue delay, bad faith or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the moving party." <u>Foman v Davis</u>, 371 U.S. 178, 182 (1962); In re <u>Burlington Coat Factory Sec. Litig</u>. 114 F.3d 1410, 1426 (3d Cir. 1997).

Appellee argued *inter alia* that Appellant's proposed amendment of one paragraph to the Amended Complaint alleging that partial-day deductions were a reason for the failure of an FLSA deduction was "futile, being devoid of legal and factual merit and failing to cure prior pleading deficiencies." In further response to Appellee's requested amendment, Appellee argued disingenuously that, "the plaintiff did not raise the issue of partial day deductions in discovery responses,…,

24

nor in any pleading before her summary judgment motions and certainly not at or before the plaintiff's June 29, 2011 deposition…." (AA-182). Finally, Appellee argued, that the reason why the intended amendment was futile was because, "it contains legal conclusions that are unsupported and contradicted by undisputed material facts."

Clearly, the facts of this case as supported by the pleadings found on the docket and the documentary and testimonial evidence of Appellee show that Appellee's claims as set forth in the above paragraph do not comport with the facts and the pleadings in the matter at bar. Appellee, through its counsel, distorted the record in an apparent effort to convince the court below to deny Appellant's request to amend her pleading.

As has been stated previously in this brief, the issue of being paid on an hourly basis rather than a salary basis (alternatively designated as the "partial-day deduction issue") was initially raised at the outset of Plaintiff's deposition that occurred more than four months prior to the close of discovery. During that interim of time subsequent to Plaintiff's deposition, there were further discovery and document exchanges between the parties to determine the extent of and the number of partial-day deductions from Appellant's base pay. By the time that discovery closed, this issue was well known and was the principal issue in the litigation. There appeared to be no need to amend the Amended Complaint to include this

issue as the defense was on notice and took an active role in litigating this issue. It was only at the time of the filing of Appellee's response to Appellant's motion for summary judgment wherein Appellee feigned lack of knowledge as to this issue, that prompted Appellant's motion to amend.

The lower court actually ruled on the substantive issue of the salary basis versus hourly basis. The court determined that there was no need for Appellant to further amend her complaint to include the language regarding partial-day deductions. However, in the alternative, the court denied Plaintiff's motion for amendment and apparently misapprehended the record below regarding the extensive litigation regarding this particular issue. The court's denial was based on the statement that such amendment was "too late – and too prejudicial and burdensome to Defendant, as well as disruptive to the Court."

Appellant respectfully argues that there was no issue as to the timeliness of the intended amendment and certainly that it was not prejudicial or burdensome to Defendant who had been actively litigating this issue for approximately 6 months before Appellant's application for amendment. Finally, while it is recognized that the District Court has discretion to deny motions to amend, a finding that such amendment would be "disruptive to the court" has no factual basis.

# III. THE COURT BELOW ERRED WHEN IT DETERMINED THAT APPELLANT HAD NOT SUFFICIENTLY PLED A RETALIATION CLAIM PURSUANT TO THE FAIR LABOR STANDARDS ACT.

Appellant sought leave of court in November, 2010 to file an Amended Complaint to include various allegations of retaliation. The court granted Appellant's motion and the Amended Complaint was filed on January 24, 2011. The Amended Complaint added 10 paragraphs to the complaint, five of which were factual allegations found in the Factual Background section of the Amended Complaint. The remaining five new paragraphs were under the new "Count III Retaliation." Unfortunately, it was in Count III that the wrong language was used and the issue of discrimination was inadvertently incorporated into these pleadings.

Appellee failed to inquire at the time of Plaintiff's deposition, more than five months after the filing of the Amended Complaint, about any of the new allegations found in the Amended Complaint. There were no discovery requests directed by Appellee's counsel to Appellant during the course of the discovery with regard to this issue of retaliation.

It is axiomatic that a retaliation allegation must follow a specific allegation of alleged misconduct on behalf of the employer. The only issue of alleged liability

for the Appellee alleged in the Complaint and Amended Complaint was the failure to pay overtime pursuant to the FLSA. Therefore, the unfortunate reference to discrimination in the retaliation paragraph, without a supporting factual basis in the Factual Background section of the Amended Complaint should not have prevented any inquiry into Appellant's allegations. Indeed, even in the paragraphs setting forth the retaliation count, paragraph 42 set forth an allegation that specifically relates to FLSA retaliation wherein it alleged that [Light Action], "consequently terminated Plaintiff after she sought legal counsel and began questioning Light Action's exemption policies."

Appellee's failure to discover Appellant's retaliation claim prompted Appellant to append her affidavit to the summary judgment pleadings, further elaborating on the nature of the FLSA retaliation that prompted her termination from Light Action.

Appellant asserts that the retaliation issue was properly raised through pleading and that Appellee had notice of same at the time Appellant sought leave of Court to add the retaliation Claim and at the time the Amended Complaint was filed pursuant to the court's order.

Appellant respectfully requests that summary judgment on Appellant's retaliation claim be reversed and remanded to the District Court for trial.

## **CONCLUSION**

For the foregoing reasons, Appellant respectfully requests that this Court reverse the Order of the District Court for the District of Delaware and remand this matter to the District Court for trial and an assessment of damages for Appellee's failure to pay overtime compensation to Appellant.

Respectfully submitted,

**MARTIN & ASSOCIATES, P.A.**

/s/ Jeffrey K. Martin

**JEFFREY K. MARTIN**          #2407
1508 Pennsylvania Avenue
Wilmington, DE 19806
302-777-4680
jmartin@jkmartinlaw.com
*Attorney for Plaintiff*

Dated: October 22, 2012

**CERTIFICATION PURSUANT TO F.R.A.P. 32(a)(7)(C)**

I, the undersigned attorney for Appellant, hereby certify that the attached Appellant's Opening Brief is in compliance with the requirements of F.R.A.P. 32(a)(7) with a word count of 6,197 without regard to the exclusions as noted in F.R.A.P. 32(a)(7)(b)(iii).

**CERTIFICATION PURSUANT TO LOCAL APPELLATE RULE 28.3**

Pursuant to Local Appellate Rule 28.3, the undersigned Attorney for Appellant hereby certifies that he is a member of the Bar of the United States Court of Appeals for the Third Circuit.

**CERTIFICATION OF ELECTRONIC BRIEF**

I, the undersigned Attorney for Appellant, hereby certify that the text of the electronic brief and the hard copies of the brief are identical. I further certify that the electronic PDF file brief was subjected to a virus scan using Avast Antivirus Version 7 software and that the brief is free of any viruses.

**CERTIFICATE OF SERVICE**

I hereby certify that on the twenty-second day of October, 2012, the undersigned filed ten copies of the Appellant's Opening Brief with the Clerk of the Court by mail delivery and electronically filing a copy with the Clerk's office.

I further certify that I am serving two copies of the Brief on this date to the following counsel:

David M. Fry, 300 Delaware Ave. Suite 1120, Wilmington, DE 19801

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| **LESLIE L. SANDER,** | ) | |
| | ) | C.A. No. 12-2648 |
| Plaintiff, | ) | District Court No. 1-10-cv-684 |
| | ) | |
| v. | ) | |
| | ) | |
| **LIGHT ACTION, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## APPENDIX TO OPENING BRIEF OF APPELLANT
## VOLUME ONE (pages AA-001-18)

On Appeal from the United States District Court
for the District of Delaware

BY:
**MARTIN & ASSOCIATES, P.A.**

*/s/ Jeffrey K. Martin*

**JEFFREY K. MARTIN**     #2407
1508 Pennsylvania Avenue
Wilmington, DE 19806
302-777-4680
jmartin@jkmartinlaw.com
*Attorney for Appellant*

DATED:  October 22, 2012

Case 1:10-cv-00684-LPS   Document 62   Filed 06/07/12   Page 1 of 1 PageID #: 561

## NOTICE OF APPEAL
### TO
### U.S. COURT OF APPEALS, THIRD CIRCUIT


**U.S. District Court for the District of Delaware**

**CIRCUIT COURT**
**DOCKET NUMBER:** _____
                    (leave blank)

**FULL CAPTION IN DISTRICT COURT AS FOLLOWS:**

**DISTRICT COURT**
**DOCKET NUMBER:** 10-684-LPS

LESLIE L. SANDER

v.

**DISTRICT COURT**
**JUDGE:** _____ Leonard P. Stark

LIGHT ACTION, INC.

Notice is hereby given that ___LESLIE L. SANDER___
                                (Named Party)

appeals to the United States Court of Appeals for the Third Circuit from [ ] Judgment, [X] Order,

[ ] Other (specify) _____

_____

entered in this action on __May 18, 2012__
                              (date)

Dated: ___June 7, 2012___

_____
(Counsel for Appellant-**Signature**)

| | |
|---|---|
| Jeffrey K. Martin, Esquire | Margaret M. DiBianca, Esquire |
| (Name of Counsel - **Typed**) | (Counsel for Appellee) |
| 1508 Pennsylvania Ave. | 1000 North King St. |
| (Address) | (Address) |
| Wilmington, DE 19806 | Wilmington, DE 19801 |
| (City, State Zip) | (City, State Zip) |
| (302)777-4680 | (302)571-5008 |
| (Telephone Number) | (Telephone Number) |

**NOTE: USE ADDITIONAL SHEETS if all appellants and/or all counsel for appellees cannot be listed on the Notice of Appeal sheet.**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LESLIE L. SANDER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 10-684-LPS |
| | : | |
| LIGHT ACTION, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **MEMORANDUM ORDER**

Pending before the Court is Plaintiff Leslie L. Sander's Motion for Reconsideration. (D.I.

59) ("Motion") By her Motion, Sander asks the Court to reconsider its March 21, 2012

Memorandum Opinion and Order denying her motion for partial summary judgment and leave to

file a second amended complaint, and granting Defendant's motion for summary judgment. (D.I.

57; D.I. 58) Plaintiff's Motion is DENIED.

## I.    **LEGAL STANDARDS**

Pursuant to Local Rule 7.1.5, a motion for reconsideration should be granted only

"sparingly." The decision to grant such a motion lies squarely within the discretion of the district

court. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999);

*Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990). These types of motions

are granted only if the court has patently misunderstood a party, made a decision outside the

adversarial issues presented by the parties, or made an error not of reasoning but of apprehension.

*See Shering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998); *Brambles*, 735 F.

Supp. at 1241. "A motion for reconsideration is not properly grounded on a request that a court

rethink a decision already made." *Smith v. Meyers*, 2009 WL 51195928, at *1 (D. Del. Dec. 30,

2009); *see also Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993). It is not an opportunity to "accomplish repetition of arguments that were or should have been presented to the court previously." *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991).

A motion for reconsideration may be granted only if the movant can show at least one of the following: (i) there has been an intervening change in controlling law; (ii) the availability of new evidence not available when the court made its decision; or (iii) there is a need to correct a clear error of law or fact to prevent manifest injustice. *See Max's Seafood Café by LouAnn, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). However, in no instance should reconsideration be granted if it would not result in amendment of an order. *See Schering Corp.*, 25 F. Supp. 2d at 295.

## II.    DISCUSSION

In her Motion, Sander contends the Court erred in its finding based upon the record that Plaintiff was paid a "guaranteed base salary of $60,000," and therefore erroneously dismissed Counts I and II of her Complaint seeking overtime compensation under the Fair Labor Standards Act. (*See* D.I. 59 ¶¶ 1-5) Plaintiff further submits the Court erroneously dismissed her Count III retaliation claim. (*See id.* ¶¶ 6-7) Having considered Sander's Motion, and response thereto, the Court continues to believe, for the reasons set forth in its Memorandum Opinion, there is no basis in the record to make any finding other than that Plaintiff was paid a guaranteed base salary of $60,000 annually, and finds nothing in the Motion that would justify the relief Sander now seeks with respect to her retaliation claim as pled. (*See* D.I. 57) Accordingly, Plaintiff's Motion is DENIED.

May 18, 2012

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LESLIE L. SANDER,                          :
                                           :
          Plaintiff,                       :
                                           :
     v.                                    :        Civ. No. 10-684-LPS
                                           :
LIGHT ACTION, INC.,                        :
                                           :
          Defendant.                       :
                                           :

Jeffrey K. Martin, Esquire, of MARTIN & ASSOCIATES, P.A., Wilmington, DE.

          Attorney for Plaintiff.


Scott A. Holt, Esquire and Margaret M. DiBianca, Esquire, of YOUNG CONAWAY
STARGATT & TAYLOR, LLP, Wilmington, DE.

Of Counsel: Jonathan H. Walker, Esquire, of MASON, MASON, WALKER & HEDRICK, P.C.,
Newport News, VA.

          Attorneys for Defendant.


## MEMORANDUM OPINION


March 21, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are: (i) Plaintiff's Motion for Partial Summary Judgment for Counts I and II of the Amended Complaint (Docket Item ("D.I.") 45 and, hereinafter, the "Partial Summary Judgment Motion"), filed by plaintiff, Leslie L. Sander ("Plaintiff"); (ii) Defendant's Motion for Summary Judgment (D.I. 47 and, hereinafter, the "Summary Judgment Motion"), filed by defendant Light Action, Inc. ("Light Action" or "Defendant"); and (iii) Plaintiff's Motion for Leave of Court to File a Second Amended Complaint (D.I. 53 and, hereinafter, the "Motion to Amend"). For the reasons discussed below, the Court will (i) deny Plaintiff's Partial Summary Judgment Motion; (ii) grant Defendant's Summary Judgment Motion; and (iii) deny Plaintiff's Motion to Amend.

## BACKGROUND

Plaintiff filed the complaint ("Complaint") in this action on August 12, 2010 against her former employer, Defendant Light Action, a production company. (D.I. 1) Light Action answered the Complaint on September 3, 2010. (D.I. 4) Plaintiff has at all times been represented by counsel in this matter.

Plaintiff alleges non-payment of overtime wages, in violation of the Fair Labor Standards Act (the "FLSA"), as amended, 29 U.S.C. § 201 *et. seq.*, as well as applicable U.S. Department of Labor regulations, including 29 C.F.R. § 541.103 *et. seq.* Specifically, the Complaint alleges that, as a Light Action manager, between May 2007 and May 2010, Plaintiff often worked in excess of forty (40) hours during her normal work week, without being compensated for overtime and work performed during her meals and other mandatory work periods. Plaintiff alleges that she should have been compensated at a rate of one and one-half times her regular rate

1

(i.e., time-and-one-half) for all time worked in excess of forty (40) hours per week during the three year period.

Plaintiff alleges that the deficiencies in her compensation were a product of Defendant's misclassification of her as an "exempt" employee; that is, an employee who does not fall within the overtime requirements of the FLSA and applicable regulations. Plaintiff further contends that Light Action's practices "destroyed any exemption that may have applied to Plaintiff" when Defendant specifically mandated that she abide by certain policies and procedures.[1] (D.I. 1 ¶ 18) In addition to seeking compensation, Plaintiff seeks liquidated damages as well as attorney's fees and costs.

On January 24, 2011, Plaintiff was granted leave to amend her Complaint, and on that day she filed her Amended Complaint. (D.I. 12) Light Action answered the Amended Complaint on February 7, 2011. (D.I. 16)

In the Amended Complaint, Plaintiff alleges that she "recently recognized a retaliatory fact pattern while reviewing her time at Light Action;" she requested the opportunity to

---

[1]    18.    Defendant necessarily destroyed any exemption that may have applied to Plaintiff when it specifically required her to adhere to Defendant's policies and procedures as follows:

    a.    report to work each day no later than 9:00 a.m. with the expectation that Plaintiff would work a *minimum* of nine (9) hours per day, five (5) days per week;

    b.    work specifically from 9:00 a.m. to 6:00 p.m. each work day; [and]

    c.    report all hours worked to management.

(D.I. 1 ¶ 18) (emphasis in original)

"incorporate this information into the Complaint." (D.I. 7 at 1; *see also* D.I. 12) Thus, the

Amended Complaint includes a state law claim of discrimination/retaliation, alleging Defendant

"intentionally and maliciously discriminated against her in retaliation for her complaints, in

violation of 19 Del. C. § 726." (D.I. 12 ¶ 42; *see also id.* ¶¶ 27-31, Count III) Asserting that

Light Action terminated her employment "with discriminatory motive" and only "after she

sought legal counsel and began questioning Light Action's exemption policies," Plaintiff

contends that Defendant's reasons for termination were purely "pretextual." (D.I. 12 ¶¶ 42-43)

On December 12, 2011, Plaintiff filed her Partial Summary Judgment Motion, seeking

summary judgment with respect to her claimed entitlement to overtime compensation. (D.I. 45;

*see also* D.I. 46; D.I. 52) Plaintiff asserts that, during her tenure with Light Action from March

1, 2007 to May 26, 2010, she did not receive all of the overtime compensation she had earned as

an hourly employee. (*See* D.I. 46 at 1) Plaintiff argues that because Defendant made various

deductions from Plaintiff's compensation, Plaintiff must be deemed an "hourly," as opposed to a

"salaried," employee. (*Id.* at 2) It follows, according to Plaintiff, that as a non-salaried, hourly

employee, she was entitled to be paid overtime, pursuant to the FLSA. Thus, Plaintiff seeks

summary judgment on Counts I and II of her Amended Complaint.

At the same time, Light Action filed its Summary Judgment Motion, seeking judgment on

all counts, on the grounds that there can be no genuine dispute that Plaintiff was exempt from the

overtime requirements of the FLSA. (*See* D.I. 48; D.I. 54) Specifically, Defendant claims:

(i) "Plaintiff admits that her position satisfied the primary-duties test of the FLSA;" (ii) "Plaintiff

was paid on a salary basis in accordance with the FLSA;" and (iii) "Plaintiff's exempt status

could not have been destroyed by virtue of the three policies upon which she relies." (D.I. 48 at

2; *see also* D.I. 54 at 1-2)  Light Action further contends that Plaintiff's Count III, which

"purports to be brought under the Delaware Discrimination in Employment Act ('DDEA'),"

instead "expressly relies on a provision" of Delaware's Persons With Disabilities Employment

Protections Act.  (D.I. 48 at 1)

Additionally, on January 13, 2012, upon completion of the briefing on the two summary

judgment motions, Plaintiff filed a motion for leave to file a second amended complaint.[2]  (D.I.

53)  In support of her Motion to Amend, Plaintiff explains that, at paragraph 18 of her Amended

Complaint, she alleges that Defendant "destroyed any exemption claimed by Defendant pursuant

to the [FLSA]."  (D.I. 53 ¶ 2)  Plaintiff offers that "[w]hen this matter was initially filed and

through early discovery, Plaintiff believed that the basis for her overtime claim was that

Defendant carefully monitored her work hours and required Plaintiff to track and report her hours

worked."  (*Id.* ¶ 3)

> As discovery progressed, a new reason for Plaintiff's entitlement to overtime
> became apparent.  Namely, after Defendant produced the requested pay data,
> analysis of the pay calculations revealed that Defendant was making deductions
> from her guaranteed $60,000 base.  The deductions were not for complete days
> but for part days.

(*Id.* ¶ 4)  Plaintiff explains that "[u]nder the FLSA, employees who may be otherwise exempt but

---

[2]The amendment proposes to add the following "partial-day deduction" allegations:

While Defendant agreed to pay Plaintiff a base salary of $60,000 (plus additional
compensation for shows and overtime to 45 hours), Defendant improperly
deducted time and compensation from her base salary when Plaintiff failed to
work at least 40 hours per week.  Partial-day deductions were made from
Plaintiff's base salary.

(D.I. 53 at (proposed) 2d Am. Compl. ¶ 18(d))

4

whose salary is reduced by partial-day deductions lose their exempt status and become non-exempt employees eligible for overtime compensation." (*Id.* ¶ 5)

Plaintiff emphasizes that Defendant would not suffer prejudice from her proposed amendment, in part because "[t]he partial-day deduction has been discussed . . . as the predominant issue in this case since June 2011." (*Id.* ¶ 6; *see also* D.I. 52 ¶¶ 2, 4 (stating while "this issue has been the predominant issue in this case," now "Plaintiff has shifted her focus to the partial-pay deduction"); D.I. 56 ¶ 4 ("[P]artial-day deduction/destruction of the exemption . . . has been the predominant issue in this case since . . . Plaintiff's deposition on June 28, 2011.")) Defendant opposes the proposed second amended complaint as futile and prejudicial to it. (*See generally* D.I. 55)

## LEGAL STANDARDS

### A.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

5

support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden,

the nonmovant must then "come forward with specific facts showing that there is a genuine issue

for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw

all reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586–87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005)

(stating party opposing summary judgment "must present more than just bare assertions,

conclusory allegations or suspicions to show the existence of a genuine issue") (internal

quotation marks omitted). However, the "mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a

party who failed to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial").

**B.     Amendment**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive

pleading has been filed, a party may amend its pleading "only with the opposing party's written

consent or the court's leave," and "[t]he court should freely give leave when justice so requires."

The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman*

*v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410,

1434 (3d Cir. 1997). The Third Circuit has adopted a liberal approach to the amendment of

pleadings. *See Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). In the absence of

undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment

should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *See*

*Foman*, 371 U.S. at 182; *In re Burlington*, 114 F.3d at 1434.

An amendment is futile if it is frivolous, fails to state a claim upon which relief can be

granted, or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC*

*Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006). Delay alone is an insufficient reason to deny

leave to amend, but there are grounds to deny amendment if the delay is coupled with either an

unwarranted burden on the court or undue prejudice to the non-moving party (as a result of the

amendment). *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

"[P]rejudice to the non-moving party is the touchstone for the denial of the amendment."

*Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (internal quotation marks omitted). To

establish prejudice, the non-moving party must make a showing that allowing the amended

pleading would (1) require the non-moving party to "expend significant additional resources to

conduct discovery and prepare for trial;" (2) "significantly delay the resolution of the dispute;" or

(3) "prevent [a party] from bringing a timely action in another jurisdiction." *Long v. Wilson*, 393

F.3d 390, 400 (3d Cir. 2004); *see also Cureton*, 252 F.3d at 273 (explaining party may suffer

7

undue prejudice if proposed amendment causes surprise or results in additional discovery,

additional costs, or additional preparation to defend against new facts or theories alleged).

"Thus, while bearing in mind the liberal pleading philosophy of the federal rules," it is also true

that "substantial or undue prejudice to the non-moving party is a sufficient ground for denial of

leave to amend." *Cureton*, 252 F.3d at 273.

## DISCUSSION

### A.    Summary Judgment

#### 1.    Compensation and Exemption

Defendant contends that Plaintiff was a manager of Light Action who was compensated

on a salary basis. Thus, Defendant continues, Plaintiff is not entitled to overtime compensation.

In Defendant's view, although Plaintiff was paid premium wages for performing work duties at

shows in the field ("gigs"), and sometimes was paid in excess of her base salary, these facts do

not take her outside the FLSA exemption, nor do they alter the fact that she received a minimum

guaranteed salary of $60,000.

Generally, the FLSA requires an employer to compensate certain of its employees "at a

rate not less than one and one-half times the regular rate" for each hour worked in excess of forty

(40) hours during a work week.  29 U.S.C. § 207(a)(1).  However, the FLSA also provides

certain exemptions from its overtime requirements, including for individuals who are "employed

in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).

> An individual employed in a 'bona fide administrative capacity' is
> someone: (1) Compensated on a salary or fee basis at a rate of not
> less than $455 per week . . . exclusive of board, lodging or other
> facilities; (2) Whose primary duty is the performance of office or
> non-manual work directly related to the management or general

8

business operations of the employer or the employer's customers;
and (3) Whose primary duty includes the exercise of discretion and
independent judgment with respect to matters of significance.

*Swartz v. Windstream Commc'ns, Inc.*, 429 Fed. App'x. 102, 104 (3d Cir. 2011); *see also* 29

C.F.R. § 541.200.

The Court concludes, based on the record provided, that no reasonable factfinder could

find that Plaintiff was not exempt under the FLSA as being employed in a bona fide

administrative capacity. Plaintiff concedes that her position – Warehouse & Rental Manager –

satisfies parts (2) and (3) of the test set forth above; i.e., the "primary duty" components of the

test. (*See* D.I. 48, June 28, 2011 Pl. Depo., at A82-A83; D.I. 46 at ¶ 4 ("For the purposes of this

Motion, Plaintiff does not dispute that her job duties and responsibilities were consistent with an

executive or administrative exemption if she had been paid a salary.")) The issue is whether

Plaintiff was also compensated "on a salary or fee basis."

The record demonstrates no genuine issues of material fact as to whether Plaintiff was

compensated by Defendant on a "salary basis." An employee is "compensated on a salary basis"

if "the employee regularly receives each pay period on a weekly, or less frequent basis, a

predetermined amount constituting all or part of the employee's compensation, which amount is

not subject to reduction because of variations in the quality or quantity of the work performed."

29 C.F.R. § 541.602. Here, Plaintiff was paid a guaranteed base salary of $60,000 per year (and

she could earn additional compensation). (*See* D.I. 48 at 4; D.I. 48 at A1, 2/12/07 Meeting Notes

of Paula DeLuca (referencing three pay components); *id.* at A238-39, Decl. of Scott Humphrey

("Humphrey Decl.") (discussing Plaintiff's base salary); *id.* at A182 (discussion by Ms. DeLuca

of Plaintiff's "guaranteed base salary of $60,000 a year with the opportunity to earn more"); *id.* at

9

A183-86 (same); *id.* at A225, Decl. of Paula DeLuca ("DeLuca Decl."), ¶¶ 4, 9 (same))

This, too, is essentially undisputed. In her own briefing in connection with her Partial Summary Judgment Motion, Plaintiff concedes that her compensation was made up of three components: "a mix of base pay of $60,000.00; payment for 25 shows for $9,712.50; and 3 hours of overtime per week for $4,680.00." (D.I. 46 ¶ 2) Other filings, and discovery responses, further demonstrate Plaintiff's acknowledgment of receiving at least a base of $60,000. (D.I. 48 at A75 ("Plaintiff received at least $60,000.00 in a gross amount per year during her tenure with Defendant."); D.I. 46 Ex.1 (Depo. Ex. 7 of Paula DeLuca); D.I. 53 ¶ 4 (discussing "analysis of the pay calculations," including Plaintiff's "guaranteed $60,000 base"))

Plaintiff's contention is that even assuming she was at one point in exempt status, that status was lost by virtue of her being required to work at certain times and report her hours. (*See* Am. Compl. ¶¶ 18-21; *see also* D.I. 50 ¶ 1) The Court, however, agrees with Defendant that Plaintiff's exempt status could not have been destroyed by virtue of the three policies upon which she relies. (*See supra* n.1; *see also* D.I. 48 at 9-11; D.I. 50 ¶¶ 1-2) An employer may require exempt employees to track and report their time, to confirm they have worked the requisite number of hours; an employer may also direct exempt employees to work a particular schedule and/or a minimum number of daily or weekly hours – all without compromising the employees' exempt status. *See, e.g., Guerrero v. J.W. Hutton, Inc.,* 458 F.3d 830, 836 (8th Cir. 2006) ("[T]he regulations do not prohibit employers from requiring employees to work a specific number of hours per week and track their time to ensure they have worked the requisite number

of hours.").[3]    Other regulations pose additional obstacles to Plaintiff's position. *See* 29 C.F.R.
§541.604(b) (providing employer may compute exempt employee's earnings "on an hourly, a
daily or a shift basis, without losing the exemption or violating the salary basis requirement, if
the employment arrangement also includes a guarantee of at least the minimum weekly required
amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a
reasonable relationship exists between the guaranteed amount and the amount actually earned");
29 C.F.R. § 541.604(a) ("An employer may provide an exempt employee with additional
compensation without losing the exemption or violating the salary basis requirement, if the
employment arrangement also includes a guarantee of at least the minimum weekly-required
amount paid on a salary basis."). There is simply no basis in the record to make any finding
other than that Plaintiff was paid a guaranteed base of $60,000 annually.

Although not entirely clear, it appears that Plaintiff also seeks summary judgment – and
opposes Defendant being awarded summary judgment – on the theory that her exempt status was
lost as a result of partial-day deductions. If so, the record is not sufficient to support a finding for
Plaintiff on this theory either. Plaintiff has identified nine weeks (out of 156) in which she
claims that improper deductions were made. (D.I. 46 at ¶ 5) Defendant explains in careful detail

---

[3]*See also, e.g.*, *Whisman v. Ford Motor Co.*, 157 Fed. App'x 792, 795 (6th Cir. 2005)
(finding employees were exempt even though employer issued memorandum requiring all
salaried employees to swipe identification badges through card reader so their time-sheets could
be audited against card reader reports); *Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 516 (6th
Cir. 2004) (rejecting argument employees were not exempt because they were required to
"account for at least 40 hours of work each week," "make up for partial-day absences either by
working extra hours or by taking vacation time or paid time off," or because employer exercised
"control[] [over] their work schedules and d[id] not permit them to come and go as they
please[d]"); *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 71 (6th Cir. 1997) (rejecting argument
that keeping track of time with time clock for record-keeping purposes precluded application of
exemption).

how the records relied on by Plaintiff do not show any improper deductions, including any deductions that would result in loss of exempt status, being made. (D.I. 50 at 3-9)  On this record, the Court does not find any genuine disputes of material fact.

Accordingly, the Court will grant Defendant's Motion for Summary Judgment.

### 2.    Retaliation

Defendant is entitled to summary judgment on Plaintiff's claim for retaliation as well. Count III of the Amended Complaint relies on a provision of Delaware's Persons With Disabilities Employment Protections Act. (*See* D.I. 12 ¶ 41)  But Plaintiff has not alleged that she is a "person with a disability."[4] (*See* D.I. 48 at 11)  To the contrary, she has admitted that she is *not* such a person. (*See* D.I. 46 at A141-B ("Q. . . . You don't have any kind of handicap or disability that prevents you in any way from doing . . . what you every day, major life activities? A. No."))  Plainly, no reasonable factfinder could find for Plaintiff on her state-law retaliation claim.

In her briefing, Plaintiff now asks the Court to read Count III as alleging retaliation due to her FLSA claim, even though it is not pled as such. (D.I. 49 ¶ 2)  The Court is unwilling to do so.  In any event, the Court agrees with Defendant, who writes:

> Even if the Court were to redraft the claim as one under an entirely
> different law (federal wage statute instead of state disability
> statute), *and* did so by adding allegations that directly contradict
> the otherwise undisputed evidence already in the record (including
> Plaintiff's own testimony), *and* read Paragraph 42(a) [of the
> Amended Complaint] as asserting a causal connection *and* a
> protected activity, Plaintiff's FLSA retaliation claim *still* would fail
> because she has failed to proffer any evidence for a jury to find that
> the reason[s] provided by Defendant for terminating Plaintiff were

---

[4]*See* 19 Del. C. § 722(4) (defining "Person with a disability").

a mere pretext for unlawful retaliation.

(D.I. 54 at 6) Plaintiff's affidavit, under the circumstances, comes too late to create a genuine

dispute of material fact. *See generally Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991)

("When, without a satisfactory explanation, a non-movant's affidavit contradicts earlier

deposition testimony, the district court may disregard the affidavit in determining whether a

genuine issue of material fact exists.").

Accordingly, the Court will grant Defendant summary judgment on Count III.

**B.    Amendment**

The Court will also deny Plaintiff's Motion to Amend, by which she seeks leave to file a

Second Amended Complaint to allege that she lost her exempt status as a result of deductions

from her base salary. Although unclear, it seems that the only purpose for seeking amendment is

to make clear that Plaintiff is alleging violations of the FLSA. (D.I. 56 at ¶ 3) The Court has

read the Amended Complaint as raising such allegations, and has considered the record with

respect to such allegations in connection with evaluating the summary judgment motions. Thus,

there is no need for a Second Amended Complaint.

In the alternative, to the extent the Second Amended Complaint would add something

new to the instant case, the Court denies the request for amendment as an exercise of its

discretion. The Court has "considerable discretion" in entertaining such a request; a sufficient

ground for denial is present where amendment would result in "substantial or undue prejudice to

the non-moving party." *Cureton*, 252 F.3d at 273, 274. This is particularly true in cases where

"no 'reasonable explanation' exist[s] to overlook the delay." *See, e.g., id.* at 274.

Here, in addition to discovery and summary judgment already being completed, the

13

parties are within two weeks of the pretrial conference (April 5, 2012) and there are less than six

weeks until trial (May 3, 2012). It is too late – and too prejudicial and burdensome to Defendant,

as well as disruptive to the Court – to permit amendment at this point. *See generally Carey v.*

*Beans*, 500 F. Supp. 580, 582 (E.D. Pa. 1980), *aff'd* 659 F.2d 1065 (3d Cir. 1981) (table)

("[W]here plaintiff files a motion to amend after defendant has moved for summary judgment the

motion to amend will not be granted unless the party seeking amendment can show not only that

the proposed amendment has substantial merit, but also come forward with substantial and

convincing evidence supporting the newly asserted claim.") (internal citations and quotation

marks omitted).

## CONCLUSION

For the reasons set forth above, the Court will (i) deny Plaintiff's Partial Summary

Judgment Motion, (ii) grant Defendant's Summary Judgment Motion, and (iii) deny Plaintiff's

Motion to Amend. An appropriate Order will be entered.