**RECORD NO. 12-2648**

In The

# United States Court of Appeals
### For The Third Circuit

# LESLIE L. SANDER

*Plaintiff – Appellant*,

**v.**

# LIGHT ACTION, INC.,

*Defendant – Appellee*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

———————

## BRIEF OF APPELLEE

———————

Jonathan H. Walker
MASON, MASON, WALKER & HEDRICK, P.C.
11848 Rock Landing Drive, Suite 201
Newport News, Virginia  23606
(57) 873-3909

*Counsel for Appellee*

## United States Court of Appeals for the Third Circuit

### Corporate Disclosure Statement and
### Statement of Financial Interest

No. _12-2648_

Leslie Sander, Appellant

v.

Light Action Inc., Appellee

Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, _Light Action Inc._____ makes the
following disclosure:                                  (Name of Party)

      1) For non-governmental corporate parties please list all parent corporations:


None


      2) For non-governmental corporate parties please list all publicly held companies
that hold 10% or more of the party's stock:


None


      3) If there is a publicly held corporation which is not a party to the proceeding
before this Court but which has as a financial interest in the outcome of the proceeding, please
identify all such parties and specify the nature of the financial interest or interests:


N/A


      4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy
estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors'
committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is
active participant in the bankruptcy proceeding.  If the debtor or trustee is not participating in the
appeal, this information must be provided by appellant.


N/A


/s/ John W. Shaw_____          Dated: _July 20, 2012_____
(Signature of Counsel or Party)

(Page 2 of 2)

*rev: 11/2008*

## <u>CERTIFICATE OF SERVICE</u>

I, John W. Shaw, hereby certify that on July 20, 2012, this document was served

on the persons listed below in the manner indicated:

### <u>BY FIRST CLASS MAIL</u>

Jeffrey K. Martin
MARTIN & ASSOCIATES
1508 Pennsylvania Ave., Suite 1C
Wilmington, DE 19806
Jmartin@martinandassociatespa.com

SHAW KELLER LLP

/s/ John W. Shaw_____
John W. Shaw (Del. Bar No. 3362)
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com

*Attorney for Light Action Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................iv

COUNTER STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION .........................................1

COUNTER STATEMENT OF ISSUES ...................................................1

COUNTER STATEMENT OF CASE ....................................................2

COUNTERSTATEMENT OF FACTS ....................................................5

    I.     Light Action .........................................................5

    II.    Appellant's Employment With Light Action ........................5

    III.   Appellant's Compensation ....................................7

COUNTERSTATEMENT OF THE STANDARD OR SCOPE OF REVIEW ........9

SUMMARY OF ARGUMENT ...........................................................10

ARGUMENT ..............................................................................13

    I.     The District Court's Determination That No Genuine Issue
           Exists Over The Application of the FLSA Exemptions Should
           Be Affirmed..............................................................13

           A.    The Misclassification Framework ...........................13

           B.    The FLSA Exemption Applies As a Matter of Law ................14

           C.    The FLSA Exemption Was Not Destroyed For Any
                Reason Relied Upon by the Appellant......................16

i

1.     The Appellant's Amended Complaint Raised No Basis Upon Which to Find the Exemption Destroyed .......................................................................16

2.     The District Court Did Not Erroneously Reject the Appellant's Allegation That Light Action Had an Actual Practice of "Docking" the Appellant's salary..............................................................................18

3.     The Appellant's Allegation of Partial Day Deductions While Not Properly Pled Before the District Court Was, In Any Event, Considered and Rejected by the Court .....................................................23

4.     Even If Partial Day Deductions Had In Fact Been Made As The Appellant Had Alleged, They Would Not Cause the Loss of the FLSA Exemption As a Matter of Law ..................................................................24

II.     Appellant's Retaliation Claim Was Not Erroneously Denied ............26

A.     Appellant Failed To Plead Retaliation Under the FLSA ..........26

B.     No Credible Basis Existed To Support An FLSA Retaliation Claim ......................................................................27

C.     No Evidence Existed To Rebut Light Action's Showing That the Appellant Was Terminated for a Legitimate Business Reason.......................................................................29

III.     Appellant's Motion To Amend Was Not Erroneously Denied..........31

CONCLUSION ....................................................................................36

CERTIFICATION PURSUANT TO F.R.A.P. 32(a)(7)(C)

CERTIFICATION PURSUANT TO LOCAL APPELLATE RULE 28.3

CERTIFICATION OF ELECTRONIC BRIEF

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ACS v. Detroit Edison Co.,*
     444 F.3d 763 (6th Cir. 2006) ........................................................................19

*Adams v. Gould Inc.,*
     739 F.2d 858 (3d Cir. 1984), *cert. denied,*
     469 U.S. 1122 (1985) ...................................................................................34

*Ahern v. County of Nassau,*
     118 F.3d 118 (2d Cir. 1997) .........................................................................25

*Artam v. International Harvester, Inc.,*
     355 F. Supp. 476 (W.D. Pa. 1972) ...............................................................33

*Auer v. Robbins,*
     519 U.S. 452 (1997)......................................................................................25

*Bell v. Callaway Partners, LLC,*
     394 Fed. App'x 632 (11th Cir. 2010) ...........................................................37

*Carey v. Beans,*
     500 F. Supp. 580 (E.D .Pa. 1980), *aff'd,*
     659 F.2d 1065 (3d Cir. 1981) .......................................................................34

*Cash v. Cycle Craft Co., Inc.,*
     508 F.3d 680 (1st Cir. 2007)...................................................................25, 26

*Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n.,*
     573 F.2d 820 (3d Cir. 1978) .........................................................................34

*Cureton v. National Collegiate Athletic Ass'n,*
     252 F.3d 267 (3d Cir. 2001) ....................................................................32, 33

*Diersen v. Chicago Car Exch.,*
     110 F.3d 481 (7th Cir. 1997) ........................................................................33

*Drexel v. Union Prescription Ctrs., Inc.*,
    582 F.2d 781 (3d Cir. 1978) ........................................................... 9

*Dussouy v. Gulf Coast Inv. Corp.*,
    660 F.2d 594 (5th Cir. 1981) ....................................................... 33

*EEOC v. Commercial Office Prods. Co.*,
    486 U.S. 107 (1987) ................................................................... 23

*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................................... 32

*Glassman v. Computervision Corp.*,
    90 F.3d 617 (1st Cir. 1996) ....................................................... 34

*Glesenkamp v. National Mutual Insurance Co.*,
    71 F.R.D. 1 (N.D. Cal. 1974) ................................................... 33

*Guerrero v. J.W. Hutton, Inc.*,
    458 F.3d 830 (8th Cir. 2006) ..................................................... 17

*Havey v. Homebound Mortgage, Inc.*,
    547 F.3d 158 (2d Cir. 2008) ................................................. 24, 26

*Haywood v. North Am. Van Lines, Inc.*,
    121 F.3d 1066 (7th Cir. 1997) ................................................... 17

*Humphreys v. Roche Biomed. Lab. Inc.*,
    990 F.2d 1078 (8th Cir. 1993) ................................................... 33

*Kennedy v. Commonwealth Edison Co.*,
    410 F.3d 365 (7th Cir. 2005) ..................................................... 26

*Long v. Wilson*,
    393 F.3d 390 (3d Cir. 2004) ..................................................... 32

*Lorenz v. CSX Corp.*,
    1 F.3d 1406 (3d Cir. 1993) ....................................................... 33

*Lundy v. Adamar of N.J., Inc.*,
     34 F.3d 1173 (3d Cir. 1994) ............................................................32

*Martin v. Malcolm Pirnie, Inc*.,
     949 F.2d 611 (2d Cir. 1991) .................................................22, 24

*Morke v. Archer Daniels Midland Co*.,
     2010 WL 2403776 (W.D. Wisc. 2010) ........................................27

*Novak v. Home Depot U.S.A., Inc.*,
     259 F.R.D. 106 (D. N.J. 2009) ............................................... 17-18

*Ottaviano v. Home Depot, Inc.*, *USA*,
     701 F. Supp. 2d 1005 (N.D. Ill. 2010)..........................................17

*Renfro v. Indiana Michigan Power Co.*,
     370 F.3d 512 (6th Cir. 2004) ........................................................17

*Rolo v. City Investing Co. Liquidating Trust*,
     155 F.3d 644 (3d Cir. 1998) .........................................................33

*Swartz v. Windstream Communs., Inc.*,
     429 Fed. App'x. 102 (3d Cir. 2011) .......................................13, 14

*Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*,
     321 U.S. 590 (1944)......................................................................23

*Union Pacific R. Co. v. Greentree Transp. Trucking Co*.,
     293 F.3d 120 (3d Cir. 2002) ...........................................................9

*Union Planters Nat'l Leasing Inc. v. Woods*,
     687 F.2d 117 (5th Cir. 1982) ........................................................33

*Verhein v. South Bend Lathe, Inc.*,
     598 F.2d 1061 (7th Cir. 1979) ......................................................33

## STATUTES

19 Del. C. § 726 ...................................................................................2, 12

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 1331 ........................................................................................1

29 U.S.C. § 20 ............................................................................................1

29 U.S.C. §§ 201, *et seq.* .........................................................................1

29 U.S.C. § 202(a) ....................................................................................23

29 U.S.C. § 213(a)(1) ...............................................................................13

## REGULATIONS

20 C.F.R. § 603 ........................................................................................24

29 C.F.R. § 541.118(a) .............................................................................22

29 C.F.R. § 541.602 .................................................................................15

29 C.F.R. § 541.602(b)(1) ........................................................................36

29 C.F.R. § 541.602(b)(1)(2) ...................................................................36

29 C.F.R. § 541.603(b) .............................................................................25

29 C.F.R. § 541.604(a) .............................................................................37

29 C.F.R. § 778.219 .................................................................................27

## OTHER AUTHORITY

10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane,
*Federal Practice and Procedure: Civil* (3d ed. § 2716 (1998)) ................9

## COUNTER STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This is an appeal from an order of the United States District Court for the District of Delaware entered on March 21, 2012, granting the motion for summary judgment of the Appellee, Light Action, Inc., and denying the Appellant's motion for partial summary judgment.  AA-004-018.  The district court had jurisdiction to decide this case pursuant to 28 U.S.C. § 1331, because the Appellant attempted to assert, besides a pendant Delaware state claim of disability discrimination, a federal question claim under 29 U.S.C. § 20, alleging unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

Appellant filed a timey notice of appeal on June 7, 2012 (AA-001), within 30 days of the District Court's final order denying her motion for reconsideration.  AA-002-3.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291, because the district court's order of March 21, 2012 fully disposed of all justiciable claims.

## COUNTER STATEMENT OF ISSUES

1. Whether the District Court erred by deciding as a matter of law that the Appellant was paid on a salary basis and that the FLSA exemption was not destroyed by making partial deductions from the Appellant's base salary of $60,000 per year.  (AA-012-015).

2.  Whether the District Court erred by deciding that the Appellant failed to plead, and alternatively to prove a retaliation claim under the FLSA. (AA-016-017).

3.  Whether the District Court erred by applying the futility doctrine to deny Appellant's motion for leave to file a Second Amended Complaint that essentially raised no new issues. (AA-013-014).

## COUNTER STATEMENT OF CASE

The Appellant, Leslie Sander, initiated the present action on August 12, 2010, when she filed her initial Complaint.  AA-019.  Appellant filed an Amended Complaint on January 24, 2011.  AA-035.  The Appellee, Light Action, Inc., answered the Amended Complaint on February 7, 2011.  AA-043.  The Amended Complaint included three counts.

Counts I and II were styled as claims brought under the Fair Labor Standards Act ("FLSA"), and alleged that Appellant had been misclassified as an exempt employee and therefore owed compensation for "all hours worked."  AA-040. Count III alleged retaliation based upon disability pursuant to the Delaware Discrimination in Employment Act, 19 Del. C. § 726 ("DDEA"), for making "complaints" in violation of that statute.  AA-041.  After the parties completed discovery, Appellee moved for summary judgment on all three counts and the Appellant moved for partial summary judgment on Counts I and II.

The district court granted summary judgment for the Appellee on all three counts. AA-005-014. Specifically, the court acknowledged the parties did not dispute that the Appellant's duties as a lighting production and shop manager qualified as a matter of law for FLSA exemption, and held that the "record demonstrates no genuine issues of material fact as to whether Appellant was compensated by Appellee on a 'salary basis.'" AA-013. The District Court acknowledged that the Appellee did not and could not dispute that she was "paid a guaranteed base salary of $60,000 per year (and she could earn additional compensation)," which is permitted under the FLSA. AA-013; *see* AA-014.

The Court further held that the FLSA exemption was not destroyed as a matter of law by any policy or practice that the Appellant claimed at various times throughout litigation to have destroyed the Appellant's exemption status. AA-014. These included her allegation in the Amended Complaint, challenging Appellee's practice of tracking and reporting her hours of work; *see* AA-008; and the Appellant's later complaint on brief, and presently on appeal, that by paying the Appellant additional compensation when managing workers outside of the shop setting, as opposed to inside the shop, manifested a prohibited practice of "partial day deductions" from Appellant's guaranteed base salary. AA-015-016.[1]

---

[1] Appellant's central argument in this case is that the Appellee, under the FLSA, should have paid the Appellee for a full day of managing workers in the shop, each time that she was also paid (at a higher rate) for managing workers at a show –

The Court also granted summary judgment for the Appellant on the Appellant's retaliation claim, pled as Count III in both the Complaint and Amended Complaint as retaliation based upon disability under Delaware state law. AA-016-017.  The Court maintained that even if it were to re-draft the claim for the Appellant, as Appellant urged on brief, as claiming retaliation under the FLSA, her claim would *still* fail as a matter of law as no reasonable jury could find on the record presented either retaliatory *animus* or a retaliatory action on the Appellant's part.  *See*, *Id.*

As a final matter, Appellant moved, at the conclusion of briefing on both summary judgment motions, for leave to file a Second Amended Complaint. AA-008, AA 173-180.[2]  The Court denied the motion for leave to file the Second Amended Complaint, citing the futility doctrine, because in the court's analysis and decision on summary judgment, it had fully considered, addressed, and disposed of the allegations the Appellant had allegedly sought to "clarify" by her

---

essentially pretending that she were two workers being paid for working both places at the same time. Thus, if she worked during a week three days in the shop and two days at a show, Appellant contends she should still be paid for five days in the shop and that paying her for only three is tantamount to a "partial deduction" of two days in the shop.

[2]  Appellant also attempted to submit into the record an affidavit with her reply brief to impeach her prior testimony regarding the retaliation claim.  AA-158-59. Because the district court specifically excluded that evidence and because the Court's ruling in this regard was never preserved in the present appeal, Appellant's present reliance upon that affidavit should be rejected.  Appellant's Brief at 15.

proposed Second Amended Complaint. AA-007-008, 017-018.  To the extent that even the Appellant had conceded her Second Amended Complaint added no new issues,[3] and to the extent the motion was both untimely and disruptive to the judicial process, the motion was properly denied.  AA-007-008, 017-018.

## COUNTERSTATEMENT OF FACTS

### I.    <u>Light Action</u>

Appellant, Light Action, is a full-service production company based in New Castle, Delaware, specializing in theatrical lighting, staging, audio-video systems, and outdoor roofing systems.  Light Action, which was founded in 1985 by its President, Scott Humphrey, employs approximately fifteen employees.[4]

### II.    <u>Appellant's Employment With Light Action</u>

Humphrey had been friends with Appellant's family for more than a decade when he hired her in 2000.[5]  For the first several years of her employment,

---

[3]  This Court should observe that Count III in the proposed Second Amended Complaint once **again** alleged only disability discrimination under Delaware state law.  AA-179.

[4]  EE-1, ¶2 (Humphrey Declaration); *see* EE-29:8.

[5]  EE-1, ¶¶4, 7 (Humphrey Declaration); EE-23; EE-82.

Appellant worked as a Lighting Production Manager.[6] In that role, she was the supervisor responsible for producing lighting shows at various events.[7]

In February 2007, Appellant's job duties were modified and her title changed to Warehouse & Rental Manager.[8] In that role, which she held until her termination in May 2010, Appellant managed a crew of workers in Light Action's shop, and continued to produce lighting shows at some events.[9]

On May 27, 2010, the Appellant sent delivery trucks to a show at the wrong time and in the wrong order, causing substantial delays for the show's crew.[10] She also knowingly sent a broken ADA handicap lift to the same show, despite a specific directive from the Vice President that her shop employees repair the lift before sending it to the stage.[11] When Humphrey questioned her about her management, Appellant became belligerent and hostile, screaming and cursing at

---

[6]  EE-1, ¶5 (Humphrey Declaration).

[7]  EE-24 (Humphrey Declaration).

[8]  EE-1, ¶¶6-9 (Humphrey Declaration); EE-7, ¶3 (Deluca Decl.); EE-61 (Deluca Dep.); EE-74 (*Id.*).

[9]  EE-1, ¶9 (Humphrey Decl.); EE-24 ¶5 (Sander Dep.); EE-7, ¶5 (Deluce Decl.).

[10]  EE-5, ¶¶32 (Humphrey Decl.); EE-11, ¶¶29-33 (Deluca Decl.); EE-12 (Patterson Decl.).

[11]  EE-5, ¶33 (Humphrey Decl.); EE-11, ¶31 (Deluca Decl.); EE-12 (Patterson Decl.).

Humphrey.[12] As a result of the events that day, Appellant was immediately terminated.[13]

At some time prior to her termination in May of 2010, Appellant complained to DeLuca about Light Action's revision of its leave policy.[14] Appellant never complained to DeLuca or Humphrey regarding overtime wages or any other matter covered by the FLSA, and never informed Light Action that she was seeking counsel for advice regarding any matter.[15]

### III.   Appellant's Compensation

Appellant was paid a guaranteed base salary of sixty thousand dollars per year and she could earn additional compensation in certain circumstances.[16] For example, she received pay at a premium hourly rate for all time worked at shows in

---

[12]   EE-5, ¶¶ 34-35 (Humphrey Decl.).

[13]   EE-5, ¶35 (Humphrey Decl.).

[14]   EE-10, ¶¶25-27 (DeLuca Decl.); EE-14, ¶3 (Sanders Interrog. Answer).

[15]   *See* EE-5, ¶29 (Humphrey Decl.) (*see also*, EE-14-15 (Plaintiff's interrogatory answer that her complaints were about changes in personal leave time); EE-25 (Plaintiff's testimony that her interrogatory answer (No. 3) was wholly accurate and complete); AA-144:1-15 (Plaintiff's testimony that she thought she was terminated due to complaining that Humphrey was guilty of verbally fighting with her).

[16]   Appellant's Brief at 8; EE-1, ¶10 (Humphrey Decl.); EE-5, ¶4; EE-20, ¶6; EE-74:6, EE-76-78; *see* AA-060.

the field.[17]  The Appellee expected her to work "up to" forty-five hours per week,

and paid her a premium rate for any time worked in the shop in excess of that

amount.[18]  In fact, Appellant commonly worked *less* than the expected forty-five

hours per week.[19]  Nevertheless, because of the opportunities to earn additional

pay, Appellant was paid *more* than her guaranteed base salary in each of the years

that followed her change in position.[20]

Appellant admitted that Light Action accurately recorded all time worked on

her time cards and that the time cards produced by Appellee during discovery

accurately reflected all of her hours worked.  Appellant also admitted that, she was

encouraged and/or required to bring to management's attention any discrepancy in

---

[17]  EE-1, ¶11 (Humphrey Decl.); EE-2, ¶12.

[18]  EE-1, ¶¶11-12 (Humphrey Decl.); EE-109; EE-114; EE-159; EE-33:12-14; EE-36:21-24; EE-43; Plaintiff was expected to work "up to" 45 hours per week.

[19]  AA-081.  Plaintiff in fact worked *less than 45 hours per week* in approximately 25% of the 156 weeks at issue, but was paid full salary for every week she worked. EE-2, ¶17 (Humphrey Decl.); EE-8, ¶15(DeLuca Decl.); *see* EE-34:12-36:8 (Sander dep.); EE-106-107, 117, 118-120, 122, 126, 128-130, 134, 136, 137, 139,-140, 143, 145, 147-157, 160, 161, 164-170 (Sander timecards).

[20]  EE-27-28 (Sander Dep.); see EE-4, ¶19 (Humphrey Decl.); EE-10, ¶¶22-23 (DeLuca Decl.).  Plaintiff concedes that she knew, having produced shows for six years, that she could not be two places at once, and so that her pay in any given week would therefore reflect some days in the shop, and some days in the field, the latter of which was paid at the higher show rate.  EE-27:2-4 (Sander Dep.); *see* EE-1 ¶9 (Humphrey Decl.), EE-2 ¶16 (DeLuca Decl.).

her pay or time worked.[21]  In fact, Appellant admits, she regularly followed that policy and routinely met with Vice President DeLuca about any such questions.[22]

## COUNTERSTATEMENT OF THE STANDARD OR SCOPE OF REVIEW

The Appellant correctly describes this court's standard of review as plenary with regard to the cross motions in this case for summary judgment and that the court should consider whether genuine issues existed as to the material facts at issue in this case, and whether "a reasonable jury could return a verdict for the nonmoving party."  Appellant's Brief at 17.

This court should review, however, only documents that the trial court considered on summary judgment. *Union Pacific R. Co. v. Greentree Transp. Trucking Co*., 293 F.3d 120, 126 (3d Cir. 2002)(citing 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil* (3d ed. § 2716 (1998); *Drexel v. Union Prescription Ctrs., Inc.*, 582 F.2d 781, 784 n. 4 (3d Cir. 1978).  "The parties cannot add exhibits, depositions, or affidavits to support their position. Nor can they advance new theories or raise new issues in order to secure a reversal of the lower court's determination." *Id.*

---

[21]    EE-27:22-28:16 (Sanders Dep.); see EE-4, ¶¶19, 20 (DeLuca Dep).

[22]    EE-27:22-28:16 (Sanders Dep.).

Appellant in this case asks this court to rely upon documents that were not considered by the District Court on summary judgment, including an affidavit she first submitted in a response brief to the court, the court's exclusion of which is not challenged on appeal (Appellant's Brief at 16, AA-158-59). She additionally asks the court to review a spreadsheet she generated post-summary judgment (Appellant's Brief at 21, AA-196). The court should disregard these documents.

## SUMMARY OF ARGUMENT

The district court awarded summary judgment to the Appellee, Light Action, Inc. ("Light Action" or "Appellee") on the Appellant's First Amended Complaint because no genuine issues of material fact existed with respect to the Appellant's factual claims and they were properly held to be without legal merit. Additionally, the district court agreed a proposed Second Amended Complaint was both futile and untimely. These rulings should be affirmed being amply supported as a matter of law and by the record and evidence properly before the district court.

Light Action employed the Appellant as a Warehouse and Rental Manager (in the shop) at Appellee's facility in New Castle, Delaware. Appellee agreed to pay her a guaranteed base salary of $60,000 per year. Her compensation also included pay at a premium rate whenever being assigned to work outside the shop at field events ("shows" or "gigs"), and also a premium rate when she worked either beyond 45 hours in the shop (including lunch or personal breaks), or beyond

10 hours at a show.  As a result, the Appellant earned at least her guaranteed base salary of $60,000 during each year in issue.

Appellant pled three counts in her Amended Complaint, which for the reasons that follow were properly dismissed.

Counts 1 and 2 of the Appellant's Amended Complaint alleged that she was not paid overtime pursuant to the Fair Labor Standards Act ("FLSA") as a nonexempt employee.  (AA-040-41).  After filing her Amended Complaint, Appellant conceded that her job duties met the test of both the executive exemption and the administrative exemption under the FLSA, which necessarily subsumed the allegations in paragraphs 16, 20, and 22 of the Amended Complaint (taking issue with whether she worked as a manager and exercised traditional managerial discretion).  She nevertheless alleged in paragraph 18 of the Amended Complaint (and re-alleged in paragraph 21), that the FLSA exemption had been destroyed as a result of being required to work fulltime hours and to report those hours to Light Action's Vice President.  (*Id*.)

Those facts, even when taken as true, did not, as a matter of law, destroy the exemption; such terms of employment are specifically *permitted* under the FLSA regulations.  For this reason, summary judgment was proper and the FLSA, and counts 1 and 2 were properly dismissed.  The Appellant raised but never pled by Amended Complaint an additional issue during discovery, claiming that whenever

11

she worked a weekday at a show (at a greater, premium rate of pay), she was in effect being "docked" a day of pay at her base salary in the shop, and therefore subjected to a *per se* partial day deduction.  The Court considered and dismissed this claim of entitlement to more than double recovery.  No legal basis exists to hold that the FLSA requires an employer to pay a worker as if she were working in two places at the same time.

Count 3 of Appellant's First Amended Complaint alleged discrimination under 19 Delaware Code § 726, which applies to retaliation against persons with disabilities, and had absolutely no application to this case.  Alternatively, the Court agreed that the Appellant could provide no credible evidence of retaliation for complaining about any FLSA issue.  For these reasons, the court agreed that the Appellant did not allege facts in her Amended Complaint which would support her claim under Delaware state law or the FLSA.   Also for these reasons, the Court agreed that the filing of a Second Amended Complaint (purportedly clarifying the partial day deduction claim, but re-alleging the disability discrimination claim under 19 Delaware Code § 726) was both untimely and futile.

## ARGUMENT

**I.    The District Court's Determination That No Genuine Issue Exists Over The Application of the FLSA Exemptions Should Be Affirmed.**

**A.    The Misclassification Framework.**

The FLSA exempts from its overtime provisions individuals who are "employed in a bona fide executive, administrative, or professional capacity."[23] In Counts I and II of her Amended Complaint, Appellant alleged that she was improperly classified as an exempt employee during her employment with Defendant. As a result of the alleged misclassification, she contended, she was owed overtime pay for all hours worked in excess of forty in a week.

As the district court below concluded, no genuine issue exists over whether Appellant was an exempt employee, who was not, therefore, entitled to additional compensation.

A two-step analysis applies to determine whether an employee was misclassified for the purposes of the FLSA. *First*, the Court determines whether the position at issue was paid on a "salary basis" and involved primarily administrative duties, thereby qualifying for the administrative or executive exemption.[24]   In this case, Appellant stipulated that her position satisfied the

---

[23]   29 U.S.C. § 213(a)(1).

[24]   *See*, *e.g.*, *Swartz v. Windstream Communs., Inc.*, 429 Fed. App'x. 102, 104 (3d Cir. 2011).

primary-duties test.[25] Thus, with respect to the first step of the analysis, the district court was asked only to decide whether the salary-basis test was satisfied.

*Second*, the Court determines whether the exemption was lost.[26] Here, Appellant contends that Defendants destroyed the exemption by making unlawful deductions from her pay.  As the district court also concluded, no genuine issue can exist that the Appellant was paid on a salary basis and was, therefore, an exempt employee. Similarly, no genuine issue that Appellant's exempt status was not lost as a result of any of Defendant's workplace policies. Therefore, summary judgment was appropriate and should be affirmed.

### B.    The FLSA Exemption Applies As a Matter of Law.

The district court carefully reviewed the record before it, concluding that no genuine issues of material fact existed as to whether the FLSA exemption applied, and as to whether the Appellant was compensated by Defendant on a "salary basis:"

The court considered the applicable regulation, which provides in relevant part:

> an employee is 'compensated on a salary basis' if 'the employee regularly receives each pay period on a weekly, or less frequent basis, a pre-determined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of

---

[25]    AA-013 (Dist. Ct. Opin.).

[26]    *Swartz*, at 104.

14

variations in the quality or quantity of the work performed.' 29 C.F.R.
§ 541.602.

AA-013.

The court then properly observed that the record before it had amply

demonstrated no material question over whether the Appellant had been

guaranteed, and had *received* her guaranteed base salary of $60,000 per year:

> The record demonstrates no genuine issues of material fact as to
> whether Appellant was compensated by Defendant on a "salary
> basis." … Here, Appellant was paid a guaranteed base salary of
> $60,000 per year (and she could earn additional compensation). (*See*
> D.l. 48 at 4; D.l. 48 at AI, 2/12/07 Meeting Notes of Paula DeLuca
> (referencing three pay components); *id.* at A238-39, Decl. of Scott
> Humphrey ("Humphrey Decl.") (discussing Appellant's base salary);
> *id.* at A182 (discussion by Ms. DeLuca of Appellant's "guaranteed
> base salary of $60,000 a year with the opportunity to earn more"); *id.*
> at A183-86 (same); *id.* at A225, Decl. of Paula DeLuca ("DeLuca
> Decl.") 4, 9 (same)).

AA-013, -014.

Without considerable earnest, the Appellant has suggested to this Court, as

she did below, that a jury *might* find she had been guaranteed and denied a salary

basis of $74,392.50. Appellant's Brief at 22. This allegation is belied, however,

by the overwhelming evidence of record and any application of reason.[27] The

Appellant clearly knew from her years of experience that the timing and

---

[27] Plaintiff clearly understood both before and after she assumed the duties at
issue that she would be working some weekdays, and even entire weeks at shows
in the field instead of working in the shop (EE-28) (Sanders Dep.) ("when I'm out
of the shop I understand that I wouldn't have gotten a full week [shop] pay because
I was on a gig" earning premium pay).

availability of work on shows and on an overtime basis were fluctuating factors
and not ever guaranteed or made a part of her agreed upon salary; however, she
also knew when assuming the duties in issue that, regardless of the number of
shows or the availability of overtime, she would always earn, for each week of
work, at least the equivalent of her guaranteed salary of $60,000 per year.

**C.    The FLSA Exemption Was Not Destroyed For Any Reason Relied
Upon by the Appellant.**

**1.    The Appellant's Amended Complaint Raised No Basis Upon
Which to Find the Exemption Destroyed.**

The Appellant argues on brief to this court – not that the district court
erroneously invoked the FLSA exemption – but rather, that the FLSA exemption
was destroyed by way of improper "partial deductions."  Appellant's Brief at 21-
23.

The Appellant initially maintained in her Complaint, and her Amended
Complaint, and on summary judgment, that the FLSA exemption had been
destroyed for three reasons:

18.    Defendant necessarily destroyed any exemption that may
have applied to Appellant when it specifically required
her to adhere to defendant's policies and procedures as
follows:

a.   Report to work each day no later than 9:00 a.m. with
the expectation that the Appellant would work a
minimum of nine (9) hours per day, five (5) hours per
week.

      b.  Work specifically from 9 a.m. to 5 p.m. each work
          day.

      c.  Report all hours worked to management.

AA-040.

The proposition that employers may set general requirements as to the work schedule and overall number of hours worked by exempt employees has widespread support, even in cases otherwise distinguishable.[28] The district court held that being required to work during certain hours, places, or days, even if true, did not destroy the FLSA exemption as a matter of law. AA-014-015.

The court in *Haywood* maintained that any contrary construction of the FLSA defies common sense, because if employers were prohibited from directing the "quantity or quality of work an employee performs, employers would have no tool with which to combat chronic absenteeism, tardiness, or poor performance." [29]

---

[28]  *Id.*, *see Guerrero v. J.W. Hutton, Inc.*, 458 F.3d 830, 836 (8th Cir. 2006) ("We agree the regulations do not prohibit employers from requiring employees to work a specific number of hours per week and track their time to ensure they have worked the requisite number of hours"); *Renfro v. Indiana Michigan Power Co.*, 370 F.3d 512, 516 (6th Cir. 2004) (holding that an "employer may require exempt salaried employees to make up for time missed from work due to personal business; *Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1070-71 (7th Cir. 1997)(holding an employer may require exempt employees to work an established shift and to either make up missed scheduled work time or take sick leave).

[29]  *Id.*; *see also*, *Ottaviano v. Home Depot, Inc.*, *USA*, 701 F. Supp. 2d 1005, 1008 (N. D. Ill. 2010)(a contrary construction would be "particularly untenable in the retail context, as employers could not ensure that exempt managers worked scheduled shifts where they are required to open or close a store."); *Novak v. Home*

The Appellant has apparently abandoned in the present appeal the arguments raised in her Amended Complaint regarding alleged destruction of the FLSA exemption, and instead now relies solely upon the argument she made on summary judgment to the district court – that is, that the exemption was somehow destroyed by not paying the Appellant *twice* for those weekdays that she worked at a show *instead of* in the shop.[30]

> ## 2. The District Court Did Not Erroneously Reject the Appellant's Allegation That Light Action Had an Actual Practice of "Docking" the Appellant's salary.

Near the close of discovery Appellant first suggested that "partial day deductions" from the Appellant's base salary had destroyed her FLSA exemption.[31] Light Action therefore propounded an interrogatory requesting the identity of any partial day deduction that the Appellant relied upon for her unpled allegation.[32] Out of the three year period, or 156 weeks, that she placed in issue, the Appellant had alleged before the District Court that there were nine "examples"

---

*Depot U.S.A., Inc.*, 259 F.R.D. 106, 116 (D. N.J. 2009)("That any employee, exempt or non-exempt, may be terminated for not showing up to work is common sense * * * * [W]hat would cause an employee to lose his exempt status is a clear and particularized policy-one which 'effectively communicates' that deductions will be made in specified circumstances.").

[30] Appellant's Brief at 21-23; *see* EE-86-92 (DeLuca Dep.).

[31] AA-08 (Dist. Ct. Dec.).

[32] AA-147.

of alleged partial deductions and had plainly refused to identify any other.[33]  In all of her examples, however, except for two, the Appellant had earned her guaranteed salary *or more* for the week in issue due to the extra pay she also received for working in the field, instead of in the shop.[34]  In each of the remaining two examples, the Appellant received a "full" day deduction from pay after taking a full day of unpaid leave.[35]  None of the additional timecard examples cited by the Appellant to the district court began to reflect a dock in pay, or pay for anything less than a full day (or week) of pay:

   a.  In example 1, Appellant worked 4 full days in the shop and 2 show days – she received due to the premium pay more than her weekly salary of $1153.85.[36]

   b.  In example 2, Appellant worked two full days in the shop, two full show days, and took one full day of vacation – she received due to the premium pay more than her weekly salary of $1153.85.[37]

---

[33]  AA-054, ¶5.

[34]  AA-068-069, 072-076.

[35]  AA-070-071.

[36]  AA-068.  Under the regulations, paying an exempt worker compensation above the worker's guaranteed salary "is not inconsistent with the salary basis of payment."  *ACS v. Detroit Edison Co.*, 444 F.3d 763, 768 (6th Cir. 2006).

[37]  AA-069.

c.  In example 3, Defendant paid the Appellant for 4 full days of work in the shop, because she also elected to take one full day of leave without pay.[38]

d.  Likewise in example 4, Defendant paid the Appellant for 4 full days of work in the shop, because she elected to take one full day of leave without pay.[39]

e.  In example 5, Appellant worked three full days of work in the shop, and three full days of work in the field – she received due to the premium pay more than her weekly salary of $1153.85.[40]

f.  In example 6, Appellant worked for two full days of work in the shop, and four full days of work in the field – she received due to the premium pay more than her weekly salary of $1153.85.[41]

g.  In example 7, Appellant worked two full days in the shop, and two full show days – she received due to the premium pay more than her weekly salary of $1153.85.[42]

---

[38]  AA-070.

[39]  AA-071.

[40]  AA-072.

[41]  AA-073.

[42]  AA-074.

h. In example 8, Appellant worked the entire week in the shop and was paid her salary of $1153.85, plus overtime pay.[43]

i. In example 9, Appellant worked four full days in the shop, and two full show days – she received due to the premium pay more than her weekly salary of $1153.85.[44]

The Appellant challenged Ms. DeLuca during her discovery deposition with only two of the alleged nine "examples" at her deposition.[45] Ms. DeLuca testified that although the Defendant calculated her time worked in the shop versus at shows, and on a regular versus overtime basis, to ensure the Appellant received the benefit of her premium pay, the Appellant received her full salary equivalent or more during each week.[46]

---

[43] AA-075.

[44] AA-076.

[45] AA-084, 089 (Deluca Dep.). Appellant now claims on appeal that there are not nine, but sixteen examples of her working at shows for more money, rather than in the shop for less, and for each of these days this court should find her entitled to be paid as if she were working, and being paid for working in both places at the same time. Appellant's Brief at 23. Light Action respectfully objects to any reliance upon the post-summary judgment spreadsheet and a newer compilation of documents not cited in response to interrogatory, nor on summary judgment, nor considered by the district court.

[46] EE-86:14-201:7 (DeLuca Dep.); EE-87-99 (Id.); AA-099.

21

Ms. DeLuca testified further that the Appellant was never docked, nor ever intended to be "docked" for a partial day of absence from work as Appellant alleges.[47]

With regard to this issue, the Appellant claims seven more "examples" exist never considered by the district court. Appellant's Brief at 23.  These should not be considered at this stage on appeal and brief.   Also with regard to this issue, as before the district court, she relies upon only one case in her opening brief to this court.[48]

In *Martin*, the Second Circuit Court of Appeals relied upon 29 C.F.R. § 541.118(a) to hold that an employee who is "docked pay for missing a fraction of a workday must be considered an hourly, rather than a salaried, employee."[49]  As evidenced above, none of the "examples" cited by the Appellant reveals a dock in pay.  Instead, Appellant asks the court to pretend that she received *no compensation* whenever she worked a day at a show instead of in the shop – and to find in effect that her pay should have been more than doubled, as though she were

---

[47]   EE-84-86 (DeLuca Dep.); *see* EE-10 at ¶¶20-23 (DeLuca Decl.).

[48]   Appellant's Brief at 22.  AA-055 ¶9 (*citing Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611 (2d Cir. 1991)).

[49]   *Martin*, 949 F.2d at 615.

working (and earning compensation) in both places at once, on any weekday that she worked a show.[50]

### 3. The Appellant's Allegation of Partial Day Deductions While Not Properly Pled Before the District Court Was, In Any Event, Considered and Rejected by the Court.

Despite the lack of proper pleading, the district court nevertheless addressed specifically and rejected the Appellant's position regarding *per se* partial day deductions:

> Although not entirely clear, it appears that Appellant also seeks summary judgment - and opposes Defendant being awarded summary judgment - on the theory that her exempt status was lost as a result of partial-day deductions. If so, the record is not sufficient to support a finding for Appellant on this theory either. Appellant has identified nine weeks (out of 156) in which she claims that improper deductions were made. (D.I. 46 at 5). Defendant explains in careful detail how the records relied on by Appellant do not show any improper deductions,

---

[50]  Plaintiff's legal argument presupposes, for example, that if she worked 4 days at a show and 1 day in the shop, she should receive her base salary for working a full week in the shop, even though her pay also included four show days and exceeded her base salary.  She claims the FLSA effectively requires her to be paid both at her premium rate and for *nine* days of work – as if she were working both in the shop *and* at a show during four work days.  *See* EE-92-93 (raising the same contention when cross examining Ms. DeLuca at her deposition).

The FLSA is intended to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202(a), and to "guarantee … compensation for all work or employment engaged in by employees covered by the Act." *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602 (1944). A Plaintiffs' interpretation of the FLSA that is so "plainly at variance with the policy of the legislation as a whole… need not and should not [be] countenance[d]." *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 120 (1987) (internal quotes and cites omitted).

including any deductions that would result in loss of exempt status, being made. (D.I. 50 at 3-9) On this record, the Court does not find any genuine disputes of material fact.

AA-015-016.

### 4.    Even If Partial Day Deductions Had In Fact Been Made As The Appellant Had Alleged, They Would Not Cause the Loss of the FLSA Exemption As a Matter of Law.

The United States Department of Labor amended the FLSA regulations in 2004, and explained that under the "new rule,"[51] only "an employer who has an *actual practice* of making improper deductions will lose the exemption during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions."[52]

"Generally, an employer who reduces an employee's compensation as a result of the employee's hours or the quality of the employee's work may not consider the employee to be paid on a salary basis."[53]  Light Action did not engage in such a practice, evidenced by the regular pay to Appellant of at least her weekly

---

[51]    20 C.F.R. § 603.

[52]    *Id.* (emphasis added).

[53]    *Havey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 163 (2d Cir. 2008) (*citing Martin*, *supra*, 949 F.2d at 615).

salary for weeks in which she worked a full week in the shop, but less than the anticipated 45 hours, including her lunch and breaks.[54]

However, even if Light Action had *reduced* compensation based upon the quantity or quality of hours worked, "exempt status will be denied only if there is either ... an actual practice of making ... deductions,"[55] or, failing that, a "clear and particularized policy – one which effectively communicates that deductions will be made in specified circumstances."[56] No actual policy or practice of deductions existed in this case.

The applicable regulation further instructs that, in order for a policy to amount to an "actual practice," a court or fact-finder is to consider "the number of improper deductions … ; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions." [57]

---

[54]  *See* EE-8, ¶15 (DeLuca Declaration, referencing timecards at EE-97-171).

[55]  *Ahern v. County of Nassau*, 118 F.3d 118, 121 (2d Cir. 1997).

[56]  *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted).

[57]  29 C.F.R. § 541.603(b); s*ee Cash v. Cycle Craft Co., Inc.*, 508 F.3d 680, 684 (1st Cir. 2007) (affirming grant of summary judgment for employer because "two aberrant paychecks out of the approximately 50 that Plaintiff received did not

Thus, even if "partial day deductions" were proven to exist through Appellant's plainly deficient examples, her failure to establish that the employer had a clearly communicated policy *permitting* improper deductions, means she could not have established, as a matter of law, that an "actual practice" of making illegal deductions existed.  A system of deductions, even if it did exist, "would not violate the 'salary-basis test' unless the system had been designed to circumvent the requirements of the FLSA."[58]

## II.    Appellant's Retaliation Claim Was Not Erroneously Denied.

### A.    Appellant Failed To Plead Retaliation Under the FLSA.

The Appellant alleged in Count III of her First Amended Complaint,[59] and in her proposed Second Amended Complaint,[60] that she had been discriminated against on the basis of disability under Delaware Law.  She presently maintains

---

amount to an 'actual practice'"); *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 372 (7th Cir. 2005) ("Identifying a few random, isolated, and negligible deductions is not enough to show an actual practice or policy of treating as hourly the theoretically salaried."). Just as the Plaintiff in *Cash*, Sander in this case has acknowledged that she was earning a base "salary," and the only dispute here is whether she should have been paid *twice* for each day that she worked at a show, as though she were working in the shop.

[58]    *Havey*, 547 F.3d at 165.

[59]    AA-033

[60]    AA-179

that the error in pleading the same count three times is obvious,[61] and complains

that the district court, and this Court, should consider Count III to be a properly

pled claim for FLSA retaliation.[62]  Appellant cites no law that requires a court or a

defendant to re-draft a plaintiff's claim for them, and the district court below

agreed that the record, in any event, did not support an FLSA retaliation claim.

### B.    No Credible Basis Existed To Support An FLSA Retaliation Claim.

No question exists that the Plaintiff complained to Light Action about a loss

of vacation leave in March of 2010.[63]  No question also exists, however, that

complaining about vacation leave is not protected activity under the FLSA.  A

"failure to pay vacation hours is not a violation of the FLSA because payments for

vacation time "are not regarded as compensation for working." *Morke v. Archer*

*Daniels Midland Co.*  2010 WL 2403776, 2 (W.D. Wisc. 2010) (citing 29 C.F.R.

§ 778.219).

Light Action asked the Appellant to provide the factual basis for claiming

"retaliation" for consulting counsel, and her complete interrogatory answer

referenced only complaining to Light Action about vacation and sick leave

---

[61]   Appellant's Brief at 27.

[62]   *Id*. at 28.

[63]   EE-5, ¶30 (Humphrey Decl.); EE-10 ¶¶25-27 (DeLuca Decl.); EE-14-15; (Sander Interrog. Ans. 3).

changes, making no reference or allegation of any kind to overtime claims or issues.[64] Moreover, she told neither Ms. DeLuca nor Mr. Humphrey that she would be consulting counsel.[65]

At her deposition, Plaintiff reviewed the same interrogatory and claimed it was a full and complete answer.[66]

Given the practical effect of the handbook change, and the affect it had upon the Plaintiff's benefits package, no basis existed for the district court to adopt the Plaintiff's bare assertion, otherwise contradicted by even her own testimony,[67] that she complained to Ms. DeLuca about overtime pay or overtime policy, or any matter that related to the FLSA. Because overtime pay and policy were never a topic of discussion or consideration at the time of termination; but rather, merely an artful afterthought of the Appellant to bolster her claim, summary judgment for the Appellee was properly granted on Count III even if it were re-drafted as a claim for retaliation under the FLSA.

---

[64]   EE-14-15 (Sander Interrog. Ans. 3).

[65]   EE-5, ¶31 (Humphrey Decl.); EE-10, ¶28 (DeLuca Decl.); EE-68 (DeLuca Dep).

[66]   EE-25 (Sander Dep).

[67]   EE-14-15; (Sander Interrog. Ans. 3); EE-25 (Sander Dep).

### C. No Evidence Existed To Rebut Light Action's Showing That the Appellant Was Terminated for a Legitimate Business Reason.

The Plaintiff alternatively failed, as the district court held, to provide sufficient evidence for a reasonable jury to find that the defendants' legitimate non-retaliatory reasons for terminating her employment were pretext.  AA-12-13.

Plaintiff transferred to the position of Warehouse Rental Manager because she had been incorrigible to the point that customers and clients were being lost or refusing to work with the Plaintiff on shows or on gigs.[68]  Mr. Humphrey reasoned that by transferring the Plaintiff to a position as an in-house manager, Light Action could benefit from her knowledge and skill, while at the same time abating the Plaintiff's client contact.[69]  He agreed that she would still be allowed to work shows with clients whom she had not alienated, or who had no objection to her demeanor.[70]  Unfortunately, that list of clients kept shrinking,[71] and the transfer of Plaintiff to the shop also meant that the warehouse workers were now more prone to the Plaintiff's notorious temperament.[72]

---

[68]   EE-1, ¶¶6-8 (Humphrey Decl.).

[69]   EE-1, ¶8 (Humphrey Decl.).

[70]   EE-1-2, ¶11, 14 (Humphrey Decl.).

[71]   EE-81, 84 (DeLuca Dep).

[72]   EE-55-59 (DeLuca Dep).

The Defendant terminated the employment relationship, after a final warning for similar behavior, as a direct result of the Plaintiff unleashing her temper directly at the Company's President and owner, Scott Humphrey, in the form of shouting and profanity; and on the same day defying a reasonable directive.[73]

Plaintiff can cite no evidence of pretext – the fact that the Plaintiff never actually complained about overtime pay or underpayment or FLSA misclassification; that she specifically acknowledged *instead* the dearth of overtime work in the shop; that she had a history of behaving badly, and was allowed to continue working as long as she did despite a trail of controversy and business loss in her wake; and the fact that she was terminated at the busiest time of the fiscal year for the company and industry,[74] mitigate conclusively against any reasonable inference that her termination was based upon otherwise unlawful pretext.

That Light Action refrained from actively contesting the Plaintiff's unemployment claim and from airing out to the state agency more derogatory facts as opposed to the truncated response that the Plaintiff had not been "a good fit,"[75] does not amount to waiver or estoppel, and certainly is not evidence of pretextual

---

[73]  EE-4, ¶28 (Humphrey Decl.); EE-59 (DeLuca Dep).

[74]  EE-5, ¶34 (Humphrey Decl.).

[75]  EE-5, ¶35 (Humphrey Decl.).

conduct or that the Plaintiff's termination was for any illegal reason. Other than to plainly deny the wrongdoing at the heart of her termination, the Plaintiff has failed to point to any evidence of retaliatory *animus*, or any evidence that Light Action acted with *animus* in deciding that her caustic behavior merited termination.

## III.    Appellant's Motion To Amend Was Not Erroneously Denied.

The district court denied the Appellant's Motion for Leave to file a Second Amended Complaint, on the heels of the Appellee's Motion for Summary Judgment, because the proposed Second Amended Complaint was futile, being devoid of claims not considered by the Court on summary judgment (including those that were never properly pled (*to wit*, alleged destruction of the FLSA exemption by partial day deductions, and alleged retaliation under the FLSA), being devoid of legal and factual merit, besides failing to cure prior pleading deficiencies. Plaintiff's clear admission in the proposed amendment that she had received a base salary of $60,000, and the undisputed evidence of record that she had received at least 1/52 of that salary in each of the weeks that followed, and the Appellee's showing that she was paid for every full day worked regardless of her hours worked, unless she took an unpaid leave of absence, foreclosed the FLSA overtime issues as a matter of law.

The proposed Second Amended Complaint had followed a pattern of

dilatory pleading – being filed for tactical reasons only to avoid summary

judgment; being sought after discovery had long since closed; and being preceded

by the Appellee's substantial waste of time and money defending now abandoned

claims, all of which were nevertheless recklessly re-alleged in the proposed Second

Amended Complaint.[76]

Because the decision to grant or deny leave to amend a complaint is

committed to the sound discretion of the district court,[77] and because several

reasons existed to support the district court's denial of the second motion to

amend, including undue delay; dilatory filing; repeated failure to cure deficiencies

by prior amendment; undue prejudice to the opposing party; and the futility of the

proposed amendment,[78] this Court should affirm the district court's exercise of its

discretion.

---

[76]  Plaintiff carelessly re-alleged her abandoned claims that her job duties as a manger of warehouse and show workers were non-exempt, AA-176 ¶¶19-22, 24, 32-34; as well as her admittedly inapplicable state law disability discrimination claim.  AA-179-80 ¶¶40-44.

[77]  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[78]  *Id*.; *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citing *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1196 (3d Cir. 1994) (emphasis added)); *see Cureton v. National Collegiate Athletic Ass'n*, 252 F.3d 267, 273-274 (3d Cir. 2001) (district court had "considerable discretion" to deny the addition of claims that could have been asserted earlier).

In *Cureton*, as in this case, the factual information relied upon in the proposed amendment had been known long before seeking leave to amend.[79] The district court determined, and the Third Circuit agreed, that no "reasonable explanation" existed to excuse the untimely delay in pleading.[80]

When a party, as in this case, delays a motion to amend her claim until after summary judgment has been filed, "the interests in judicial economy and finality of litigation may become particularly compelling."[81]

> [W]here plaintiff files a motion to amend after defendant has moved for summary judgment the motion to amend will **not** be granted **unless** the party seeking amendment can show not only that the proposed amendment has "substantial merit", *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir. 1979), but also come forward with **"substantial and convincing evidence" supporting the newly asserted claim**. *Artam v. International Harvester, Inc*., 355 F.Supp. 476, 481 (W.D.Pa.1972). *Cf. Glesenkamp v. National Mutual Insurance Co*., 71 F.R.D. 1, 4 (N.D.Cal.1974) ("(p)laintiff's understandable desire to avoid the effect of defendant's motion for summary judgment is insufficient reason for infusing life into a

---

[79]    *Id*.

[80]    252 F.3d at 274.  *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (time lapse between filing of complaint and proposed amendment was "unreasonable" delay where plaintiff had "numerous opportunities" to amend); *see also Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654-55 (3d Cir. 1998) (rejecting proposed second amended complaint where plaintiffs were pleading facts that could have been pled earlier).

[81]    252 F.3d at 273 (3d Cir. 2001)(citing *Diersen v. Chicago Car Exch.*, 110 F.3d 481, 489 (7th Cir. 1997); *Humphreys v. Roche Biomed. Lab. Inc.*, 990 F.2d 1078, 1082 (8th Cir. 1993); *Union Planters Nat'l Leasing Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 n. 2 (5th Cir. 1981)).

case ...").  This more demanding burden, which the party seeking amendment bears at this procedural juncture, evolves from the truism that "prejudice to the non-moving party is the touchstone for denial of the amendment." *Cornell & Co., Inc. v. Occupational Safety and Health Administration*, 573 F.2d 820, 823 (3d Cir. 1978).

To make this determination, courts look to the proposed amendment, any supporting evidence, and the degree of prejudice accruing to the defendant if the motion is granted.[82]

The law also required that the court consider the hardship to the defendants if the amendment were permitted.[83]  Specifically, the district court was permitted to consider, as it did, that the amendment required reopening discovery and further waste of judicial resources, not to mention the legal costs of the defendant that should never have been incurred in the first place, based upon having to defend against ever changing theories and claims.[84]  Given the standard articulated by the

---

[82]   *Carey v. Beans*, 500 F. Supp. 580, 582 (E.D .Pa. 1980), *aff'd*, 659 F.2d 1065 (3d Cir. 1981)(emphasis added); see *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)(holding a heightened standard of scrutiny applies when "a plaintiff's motion to amend is an attempt to alter the shape of the case in order to defeat summary judgment.").

[83]   *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122 (1985).

[84]   *See Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n.*, 573 F.2d 820, 823-24 (3d Cir. 1978) (finding significant prejudice because proposed amendment changed legal and factual basis of claim, and required defendant to marshal new defenses).

Besides the futility of the Amended Complaint, it should be understood as a practical matter that the Defendant has to date expended thousands of dollars in attorney's fees and hundreds of hours of internal labor time as the expense of

court in *Artam*, and affirmed by this Court as being applicable to a Motion to

Amend a Complaint *after* Summary Judgment has been filed, and given the district

court's disposition of all issues at bar, regardless of whether they were properly

pled by complaint, the denial of Appellant's request for leave to file a Second

Amended Complaint should accordingly be affirmed.

---

defending a "moving target" in terms of the Plaintiff's ever-changing basis to claim recovery in this case. The Defendant initially prepared to depose the Plaintiff on what was, alleged in the original Complaint, a dispute over whether the Plaintiff's primary job duties qualified her for an FLSA exemption – a claim which was then withdrawn literally **at** the deposition after hours of preparation for the same. This claim then gave way to a frivolous claim based upon loss of the exemption due to tracking and monitoring Plaintiff's work hours. Long after the Plaintiff's deposition, and her apparent realization that tracking and monitoring time is clearly permitted under the FLSA regulations, the Plaintiff then developed (but failed to plead) her present "partial day deduction" claim – maintaining that whenever she received during a weekday the greater, premium rate for managing workers in shows in the field, she was necessarily at the same time losing work at her lower base pay rate for managing workers in the shop. The Plaintiff illogically concludes that being paid at a greater premium pay rate instead of at her base pay rate equates to a partial day deduction from her base pay – claiming in essence that she should have been paid double time.

The Plaintiff has been afforded multiple opportunities to change course, to juggle claims, and to amend her pleadings, and yet she has failed at each turn to develop a claim or theory that can withstand the scrutiny of any reasonable inquiry into its legal or factual basis. For this reason as well, leave to file another amended claim should have been denied, not only because it is futile, but also because it would no doubt be followed by more artful pleading, additional discovery, and additional unnecessary legal costs that should never have been incurred in the first place.

## CONCLUSION

No factual dispute existed in this case that Light Action guaranteed the Plaintiff a base salary of $60,000, and that she received at least that salary annually.  During a regular work week, the Plaintiff's guaranteed base salary was routinely paid in full, regardless of partial days, fractions of computed hours, or shifts worked.  Because no means existed for the Plaintiff's salary to fall below its guaranteed base, a reasonable relationship existed between her guaranteed salary and the amount she actually earned.  If she had earned no premium pay by working at shows instead of in the shop, and no overtime premium pay, she would still have received her guaranteed base salary of $60,000 per year. [85] This is all the law requires.

By complaining about receiving a premium pay rate *instead of* her regular pay rate for working in the field, and by simply mischaracterizing all weekday time out of the shop as a *per se* "partial day deduction" of her shop pay, the Plaintiff asks this court to ignore that she always received *at least* the equivalent of her base salary, plus premium rates for shows and overtime, an arrangement that is entirely

---

[85]   Theoretically, this statement presumes no premium pay is earned in the year and that Appellant does not elect to take extra days of leave without pay; the deduction of full days of leave without pay is, of course, expressly permitted under the FLSA.  29 C.F.R. §§ 541.602(b)(1) and (2).  On the other hand, while Appellant's normal work week in the shop alone may have resulted in anywhere from 38 to 44 hours, she was routinely paid her full guaranteed weekly salary. *See* EE-8-9, ¶¶14-15 (DeLuca Decl. based upon a review of all timecards).

36

permissible without destroying the exemption.[86]  The complaint in this case and

each proposed amendment alleged on its face merely legal conclusions disguised

as factual allegations, and because no factual basis existed to allege that the FLSA

exemption was destroyed by partial day deductions from the Appellant's base

salary, and because, in addition, no evidence of retaliation existed under either

state or federal law, the district court did not err in granting the Appellee summary

judgment or in denying the Appellant's motion for leave to file a Second Amended

Complaint.

<div style="margin-left:40%">

Respectfully submitted,
LIGHT ACTION, INC.,

**MASON, MASON, WALKER
& HEDRICK, P.C.**

/s/ *Jonathan H. Walker*
**Jonathan H. Walker**
Virginia State Bar # 24300
11848 Rock Landing Drive, Suite 201
Newport News, VA 23606
 (757)  873-3909, telephone
(757) 873-1781, fax
jwalker@masonwalker.com

***Counsel for the Appellee***

</div>

---

[86]   29 C.F.R. § 541.604(a); *See Bell v. Callaway Partners, LLC*, 394 Fed. App'x 632, 634 (11th Cir. 2010) ("while additional compensation is permissible, [the regulations] do not require additional compensation, nor do they prescribe" how it is to be calculated).

## CERTIFICATION PURSUANT TO F.R.A.P. 32(a)(7)(C)

I, the undersigned attorney for the Appellee, hereby certify that the attached Appellee's Response Brief is in compliance with the requirements of F.R.A.P. 32(a)(7) with a word count of 8,792 words without regard to the exclusions as noted in F.R.A.P 32 (a)(7)(b)(iii).

## CERTIFICATION PURSUANT TO LOCAL APPELLATE RULE 28.3

Pursuant to Local Appellate Rule 28.3, the undersigned attorney for the Appellee hereby certifies that he is a member of the Bar of the United States Court of Appeals for the Third Circuit.

## CERTIFICATION OF ELECTRONIC BRIEF

I, the undersigned attorney for the Appellee, hereby certify that the text of the electronic brief and the hard copies of the brief are identical.  I further certify that the electronic PDF file brief was subjected to a virus scan using Symantec Endpoint Protection, version 11.0.7101.1056 software and that the brief is free of any viruses.

## CERTIFICATE OF SERVICE

I hereby certify on this 10th day of December, 2012, I caused this Brief of Appellee and Supplemental Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Jeffrey K. Martin, Esquire
Martin & Associates, P.A.
1508 Pennsylvania Ave.
Wilmington, DE 19806

I further certify that on this 10th day of December, 2012, I caused the required number of copies of this Brief of Appellee and Supplemental Appendix to be filed with the Clerk's Office of the United States Court of Appeals for the Third Circuit, via UPS Next Day Air.

/s/ *Jonathan H. Walker*
**Jonathan H. Walker**